# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 43017

<table>
<tr><td>

STATE OF IDAHO,

    **Plaintiff-Appellant,**

v.

**KYLE NICHOLAS RIOS,**

    **Defendant-Respondent.**

</td><td>

**Boise, April 2016 Term**

**2016 Opinion No. 45**

**Filed: April 26, 2016**

**Stephen W. Kenyon, Clerk**

</td></tr>
</table>

Appeal from the District Court of the Second Judicial District of the State of Idaho, Nez Perce County. Hon. Jeff M. Brudie, District Judge.

The order of the district court is <u>affirmed</u>.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, for appellant. Mark W. Olson argued.

Clark & Feeney, LLP, Lewiston, for respondent. Paul T. Clark argued.

_____

J. JONES, Chief Justice

This is an appeal from an order issued by the District Court of Nez Perce County suppressing the results of a warrantless blood alcohol test. Respondent Kyle Rios was involved in a car accident in Lewiston, Idaho. After the accident, Rios was arrested and taken to a nearby hospital by Officer Williams. At the hospital, Rios declined to sign a consent form for a blood draw. Without obtaining a warrant, Officer Williams directed hospital staff to draw Rios' blood for a blood alcohol test. Rios did not verbally or physically resist. Based in part on the results of the blood alcohol test, Rios was charged with felony vehicular manslaughter and felony leaving the scene of the accident. Rios filed a motion to suppress the results of the blood alcohol test, alleging the results were obtained through an unlawful search and seizure. The district court granted Rios' motion, concluding Rios withdrew implied consent to the blood draw by declining to sign the consent form. The State appealed.

# I.
# FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case are largely uncontested. On December 1, 2013, Rios was involved in an automobile collision in Lewiston, Idaho. After the collision, Rios was helped out of his vehicle by witnesses and began walking away from the accident. The driver of the other vehicle died at the scene.

Rios was stopped by Officer Williams. Officer Williams noted Rios had bloodshot eyes, slurred speech, and smelled like alcohol. After speaking with witnesses at the scene, Officer Williams placed Rios under arrest for driving while intoxicated and leaving the scene of a crash resulting in injury or death. Officer Williams then transported Rios to a nearby hospital.

At the hospital, Officer Williams read Rios the administrative license suspension ("ALS") advisory form and presented Rios with a blood draw consent form.[1] Rios declined to sign the consent form. Officer Williams nonetheless directed hospital personnel to draw Rios' blood without first obtaining a warrant. Rios presented his arm to the phlebotomist and did not physically or verbally resist the blood draw. The blood alcohol test revealed a BAC of .263.

Rios was subsequently charged with felony vehicular manslaughter and felony leaving the scene of the accident. Rios filed a motion to suppress the blood test results, alleging the results were obtained through an unlawful search and seizure. A hearing was held on January 6, 2015. The district court granted Rios' motion to suppress, concluding Rios withdrew implied consent for the blood draw by declining to sign the consent form. The State timely appealed.

# II.
# ISSUE ON APPEAL

Whether the district court erred in suppressing the results of the blood alcohol test.

# III.
# STANDARD OF REVIEW

We review "a district court's order granting a motion to suppress evidence using a bifurcated standard of review. This Court accepts the trial court's findings of fact unless they are clearly erroneous, but may freely review the trial court's application of constitutional principles in light of those facts." *State v. Wulff*, 157 Idaho 416, 418, 337 P.3d 575, 577 (2014) (citation omitted).

---

[1] The ALS advisory form gives a suspect notice of the penalties for refusing to submit or failing to complete evidentiary testing as required under Idaho Code section 18-8002(3).

2

# IV.
# ANALYSIS

"Requiring that a person submit to a blood alcohol test is a search and seizure under the Fourth Amendment to the United States Constitution and Article I Section 17 of the Idaho Constitution." *Wulff*, 157 Idaho at 418, 337 P.3d at 577. "The touchstone of the Fourth Amendment is reasonableness. The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." *Florida v. Jimeno*, 500 U.S. 248, 250 (1991) (citation omitted). "Like the Fourth Amendment, the purpose of Art. I, § 17 is to protect Idaho citizens' reasonable expectation of privacy against arbitrary governmental intrusion." *Wulff*, 157 Idaho at 418, 337 P.3d at 577. Our analysis here focuses on the Fourth Amendment as the parties' arguments are based only on the United States Constitution.

"Warrantless searches and seizures are presumptively unreasonable under the Fourth Amendment." *Id.* at 419, 337 P.3d at 578. "To overcome this presumption of unreasonableness, the search must fall within a well-recognized exception to the warrant requirement." *Id*. One such exception is consent. The United States Supreme Court has "long approved consensual searches because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so." *Jimeno*, 500 U.S. at 250–51. "Where the validity of a search rests on consent, the State has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given." *Florida v. Royer*, 460 U.S. 491, 497 (1983). "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Jimeno*, 500 U.S. at 251.

Under Idaho Code section 18-8002, a person gives implied consent to evidentiary testing, including blood alcohol testing, when that person drives on Idaho roads and a police officer has reasonable grounds to believe that person has been driving in violation of Idaho's DUI statutes.[2]

---

[2] Idaho code section 18-8002(1) provides:

> Any person who drives or is in actual physical control of a motor vehicle in this state shall be deemed to have given his consent to evidentiary testing for concentration of alcohol as defined in section 18-8004, Idaho Code, and to have given his consent to evidentiary testing for the presence of drugs or other intoxicating substances, provided that such testing is administered at the request of a peace officer having reasonable grounds to believe that person has been driving or in actual physical control of a motor vehicle in violation of the provisions of section 18-8004, Idaho Code, or section 18-8006, Idaho Code.

I.C. § 18-8002(1), (9)–(10). Section 18-8002 also provides penalties for drivers who refuse to submit to alcohol concentration testing, including a $250 fine and a one-year driver's license suspension for a first refusal. I.C. § 18-8002(4)(b)–(c). In *Wulff*, we held that the United States Supreme Court's decision in *Missouri v. McNeely*, __ U.S. __, 133 S. Ct. 1552 (2013), prohibited the use of an implied consent statute as an irrevocable per se exception to the warrant requirement. 157 Idaho at 422, 337 P.3d at 581. Under *McNeely*, implied consent must be revocable because "irrevocable implied consent operates as per se rule that cannot fit under the consent exception because it does not always analyze the voluntariness of that consent." *Id.*

Because implied consent must be revocable, we held that implied consent may justify a warrantless blood draw only when (1) the driver gave his or her initial consent voluntarily, and (2) the driver continued to give voluntary consent at the time of evidentiary testing. *Id.* at 423, 337 P.3d at 582 (overruling *State v. Diaz*, 144 Idaho 300, 160 P.3d 739 (2007) and *State v. Woolery*, 116 Idaho 368, 775 P.2d 1210 (1989)). "Drivers in Idaho give their initial consent to evidentiary testing by driving on Idaho roads voluntarily." *Id.* In *Wulff*, we did not specify how to determine whether a defendant "continued to give voluntary consent at the time of evidentiary testing." However, our recent decisions on this issue have focused on whether a defendant revoked implied consent before testing. *State v. Eversole*, No. 43277, 2016 WL 1296185, at *5 (Apr. 4, 2016); *State v. Halseth*, 157 Idaho 643, 646, 339 P.3d 368, 371 (2014). As we stated in *Eversole*, "a defendant's refusal, protest or objection to alcohol concentration testing terminates the implied consent given under Idaho's implied consent statute." 2016 WL 1296185 at *5. Under Idaho law, a driver's implied consent continues if it is not revoked before the time of evidentiary testing. Therefore, implied consent may justify a warrantless blood draw only when (1) the driver gave his or her initial consent by voluntarily driving on Idaho roads, and (2) the driver did not revoke consent before the time of evidentiary testing. "[A]fter a defendant has revoked consent, officers no longer may act pursuant to that initial voluntary consent." *State v. Smith*, 159 Idaho 15, 25, 355 P.3d 644, 654 (Ct. App. 2015), *rev. denied* (Aug. 18, 2015). "Of course, an individual may renew his consent after revoking it." *Id.*

Rios contends that implied consent alone does not satisfy the consent exception to the warrant requirement, and the State is required to prove a suspect gave actual voluntary consent at the time evidentiary testing was requested. We addressed a similar argument in our recent decision in *Eversole*, 2016 WL 1296185. There, the defendant argued implied consent is not

sufficient to satisfy the consent exception to the warrant requirement because, under *McNeely*, the court is required to evaluate consent based on the totality of the circumstances. *Id*. at *4. In rejecting this argument, we stated: "Nowhere does *McNeely* suggest that implied consent statutes do not constitute constitutional consent or that a totality of the circumstances test is the exclusive means for establishing consent." *Id*. (citing *McNeely*, __ U.S. at __, 133 S. Ct. at 1556). Rather,

> *McNeely* recognized that implied consent statutes are one type of "*a broad range of legal tools* to enforce [ ] drunk-driving laws and *to secure BAC evidence without undertaking warrantless nonconsensual blood draws.*" __ U.S. at __, 133 S.Ct. at 1566 (emphasis added). The Court stated, "Such laws impose significant consequences when a motorist withdraws consent; typically the motorist's driver's license is immediately suspended or revoked, and most States allow the motorist's refusal to take a BAC test to be used as evidence against him in a subsequent criminal prosecution." *Id.* Thus, *McNeely* suggests that implied consent statutes are still a valid means of obtaining BAC evidence.

*Id.* As we concluded in *Eversole*, under *McNeely*, implied consent may satisfy the consent exception to the warrant requirement. Therefore, actual consent is not required.

At the hearing on Rios' motion to suppress, Officer Williams testified that, at the hospital, he read Rios the ALS advisory form and presented Rios with a consent form for the blood draw, which Rios declined to sign. Officer Williams further testified that he then directed the phlebotomist to take Rios' blood without obtaining a warrant. The phlebotomist also testified that Rios declined to sign the consent form, but voluntarily presented his arm to her and did not verbally or physically resist the blood draw. Based on this testimony, the district court found there was no evidence of Rios verbally or physically resisting the blood draw. However, the court concluded Rios withdrew implied consent by refusing to sign the consent form. On appeal, the State contends that Rios' refusal to sign the consent form was not enough to revoke implied consent where there is no evidence that Rios verbally or physically resisted the blood draw.

The State argues the district court erred in concluding Rios withdrew implied consent because there is no evidence that Rios verbally or physically resisted the blood draw. The State contends that in prior cases where this Court has concluded a suspect withdrew consent, the suspect had verbally and/or physically resisted. Since *Wulff*, our decisions regarding implied consent have involved situations where the defendant actively resisted evidentiary testing. In *Halseth*, we held that a suspect withdrew implied consent by verbally objecting to a blood draw. 157 Idaho at 646, 339 P.3d at 371. We expanded this holding in *Eversole*, where we held that a driver who refused to submit to a breath test withdrew implied consent to all BAC testing. 2016

WL 1296185, at *5. However, this Court has never stated that verbal or physical resistance was required to withdraw implied consent. In fact, we have expressly recognized implied consent may be withdrawn where a suspect refuses to consent. *Halseth*, 157 Idaho at 646, 339 P.3d at 371 ("an implied consent statute . . . does not justify a warrantless blood draw from a driver who refuses to consent, . . . or objects to the blood draw"); *Eversole*, 2016 WL 1296185, at * 3 ("a defendant's refusal, protest, or objection to alcohol concentration testing terminates the implied consent given").

This case presents the question of how to evaluate implied consent when the State attempts to obtain actual written consent and the suspect refuses to provide it. In *State v. Padley*, the Court of Appeals of Wisconsin addressed this issue, concluding:

> It is incorrect to say that a driver who consents to a blood draw after receiving the advisement contained in the "Informing the Accused" form has given "implied consent." If a driver consents under that circumstance, that consent is actual consent, not implied consent. If the driver refuses to consent, he or she thereby withdraws "implied consent" and accepts the consequences of that choice.

*State v. Padley*, 849 N.W.2d 867, 879 (Wis. Ct. App. 2014), *rev. denied*, 855 N.W.2d 695 (Wis. 2014). We agree. Where, as here, a suspect is presented with a consent form for a blood draw, he or she is faced with two options: (1) sign the form and give actual consent for the blood draw, or (2) refuse to sign, withdraw implied consent, and accept any penalties for such a refusal under the implied consent statute.

In the present case, Officer Williams read Rios the ALS advisory form and presented him with a consent form for the blood draw. Although there is no requirement that an officer obtain actual consent, here it was requested. By requesting that Rios sign the consent form, the officer gave Rios two options: either provide actual consent or revoke implied consent and be subject to the penalties set forth in Idaho Code section 18-8002(4). Rios refused to provide actual consent.[3] We hold that under these circumstances, Rios' refusal to give actual consent also withdrew his

---

[3] The State argues there was insufficient evidence on the record to prove whether Rios refused to sign the consent form because the unsigned consent form was not included in the record. However, both Officer William and the phlebotomist testified that Rios declined to sign the form. The district court's finding that Rios refused to sign the consent form was therefore supported by substantial evidence.

implied consent to evidentiary testing.[4] In order to lawfully proceed with the blood draw, the officer needed to obtain a warrant or renewed consent from Rios. Neither occurred.

The State contends that finding implied consent was waived here would be inconsistent with Idaho courts' precedent regarding waiver of *Miranda* rights. The State relies on *State v. Butcher*, 137 Idaho 125, 44 P.3d 1180 (Ct. App. 2002), and *State v. Brennan*, 123 Idaho 553, 850 P.2d 202 (Ct. App. 1993), where the Idaho Court of Appeals held that a suspect waived his or her *Miranda* rights despite refusing to sign a *Miranda* waiver form.

First, the standard for evaluating waiver of *Miranda* rights is distinct from the standard for evaluating consent under the Fourth Amendment. *Schneckloth v. Bustamonte*, 412 U.S. 218, 241–46 (1973). Additionally, the cases the State cites are not in conflict with our holding here. In each of those cases, the suspect waived his *Miranda* rights by voluntarily speaking with officers after refusing to sign the waiver form. *Butcher*, 137 Idaho at 132, 44 P.3d at 1187 ("Butcher's inquiry about what Robinson wanted to know constituted a waiver of his right to remain silent and an invitation to the detective to ask questions."); *Brennan*, 123 Idaho at 557, 850 P.2d at 206 (holding that a suspect waived his *Miranda* rights when he agreed to speak with police, although he refused to give a written statement without counsel present). In those cases, the State presented evidence of the defendant voluntarily reinitiating conversations with police, which rendered the refusal to sign the waiver form a nullity. That same reasoning does not apply here, where there is no evidence that Rios renewed his consent to the blood draw after declining to sign the consent form. The State seems to argue Rios renewed his consent by voluntarily presenting his arm to the phlebotomist and failing to verbally or physically resisting the blood draw. We disagree. These actions show only that Rios complied with the officer's orders. Compliance with an officer's orders alone does not renew consent.

We hold that Rios revoked implied consent by declining to sign the consent form, and we uphold the district court's order suppressing the results of the blood alcohol test.

## V.
## CONCLUSION

We affirm the district court's order suppressing the results of the blood alcohol test.

---

[4] There is no contention in this case that Rios was unconscious or unable to sign the consent form when it was presented to him. Therefore, we need not address whether implied consent would continue under those circumstances.

Justices EISMANN, BURDICK, and W. JONES, and Justice Pro Tem HOSACK CONCUR.