## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 42201

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Boise, February 2016 Term |
| Plaintiff-Respondent, | ) |
| | ) 2016 Opinion No. 87 |
| v. | ) |
| | ) Filed: August 5, 2016 |
| KIRK MURRAY CHARLSON, | ) |
| | ) Stephen W. Kenyon, Clerk |
| Defendant-Appellant. | ) |
| _____ | ) |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Boise County. Hon. Patrick H. Owen, District Judge.

The district court's order denying the motion to suppress, <u>affirmed</u>.

Eric D. Fredericksen, Interim Idaho State Appellate Public Defender, Boise, attorney for appellant. Justin Curtis argued.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, attorney for respondent. Jessica Lorello argued.

_____

W. JONES, Justice

### I. NATURE OF THE CASE

Kirk Charlson ("Charlson") appeals from his conviction and subsequent withheld judgment for felony driving under the influence. Before the trial, Charlson filed a motion to suppress the results of an evidentiary blood draw that was conducted without a warrant. The district court denied the motion, and Charlson was convicted of felony driving under the influence after a jury trial in the Fourth Judicial District. Charlson appeals the denial of his motion to suppress the results of the evidentiary blood draw on the grounds that the draw violated his Fourth Amendment rights.

### II. FACTUAL AND PROCEDURAL BACKGROUND

1.    **The Trial**

On June 11, 2012, Charlson was involved in a motorcycle crash near mile post 54 of State Highway 52 in Boise County. Deputy Rob Talitian ("Dep. Talitian") of the Boise County Sheriff's Office was dispatched to the accident at approximately 6:00 P.M. When Dep. Talitian arrived on the scene, he observed two motorcycles on their sides on the ground. Charlson was lying on the ground with several apparent injuries. Charlson told Dep. Talitian that he lost control when trying to navigate a turn and crashed.

Dep. Talitian observed a strong odor of an alcoholic beverage emanating from Charlson. When Dep. Talitian requested Charlson's driver's license, registration, and proof of insurance, Charlson handed the deputy his license, and told him that the other documents were in the saddlebags of his motorcycle. Dep. Talitian opened the saddlebags, locating an expired registration card and an expired insurance card, as well as a soft cooler containing four empty beer cans. When asked, Charlson told the deputy that he had consumed two beers that day.

At that time, an ambulance arrived on scene and the paramedics began attending to Charlson. Charlson was taken to the landing zone to await air transport to St. Luke's Hospital. The deputy then investigated the other motorcycle and its driver, which are not relevant to this appeal.

While waiting for air transport, Charlson "told [Dep. Talitian] to get [his] breath tester and he would blow." Charlson first blew a 0.117, but when requested to blow a second time, he was "unable or unwilling to do so." Dep. Talitian requested that a blood sample be obtained from Charlson at the hospital. There is no contention that Dep. Talitian told Charlson that he was required to submit to the blood test.

Charlson was transported by Life-Flight to St. Luke's Hospital in Boise. At St. Luke's, a licensed phlebotomist took a blood sample from Charlson. Forensic analysis determined that Charlson's blood-alcohol concentration ("BAC") was 0.102 grams/100ccs of blood, 0.022 above the legal limit of 0.08. Charlson had prior convictions for DUI in 2004 and 2005. He was charged with felony DUI by virtue of this being his third DUI within ten years, in violation of Idaho code section 18-8004. Charlson was formally charged by information on February 25, 2013. He pleaded not guilty.

On April 17, 2013, the United States Supreme Court released its opinion in *Missouri v. McNeely*, 133 S. Ct. 1552 (2013). On May 21, 2013, Charlson filed a motion to suppress the evidence stemming from the warrantless blood draw, arguing that *McNeely* meant that Idaho's

implied consent statute[1] could not be used to support a consent argument, and that *McNeely* also instructed that the circumstances in this case were not sufficiently exigent to justify the warrantless blood draw.

A hearing regarding the motion was conducted on June 13, 2013. At this hearing, no evidence was presented by either party, but the parties did agree to certain stipulations as follows: (1) at the time of the arrest, there was no procedure in place for the Boise County Sheriff's Office to use Ada County magistrates to obtain warrants for blood draws for DUIs in Boise County; (2) there was no cellphone reception in the vicinity of the crash; and (3) Dep. Talitian had to remain on scene to continue his investigation after Charlson was transported. The parties both relied on their briefs filed before the court, which contained statements of facts not supported by any evidence.

The district court noted the unusual procedure:

> Each side has relied upon a statement of "facts" set forth in their respective briefs. These "facts" are not supported by reference to any testimony, or for that matter to any police report. This is highly unusual. Additionally, neither side objects to the facts as set forth by the other, or to the absence of any testimony to support the statement of "facts." The parties have not presented any evidence or testimony relating to the facts. The [c]ourt does not believe that this is an appropriate way to frame the facts in this, or in any other, case. However, as explained below, in this case, the [c]ourt concludes that there is basic agreement on the limited facts essential to this decision.

Due to the confusion regarding the way the motion was tried, the district court requested documents from the parties, including a police report, probable cause statement, incident summary, and photographs. From these documents, the district court found the facts as described herein.

The district court recognized that, having not obtained a search warrant to draw Charlson's blood, the State had the burden of establishing a valid exception to the warrant requirement. It found that the State met its burden of establishing that the consent exception applied. "In the [c]ourt's view, the consent issue is controlled by the Idaho Supreme Court's

---

[1] Idaho Code section 18-8002(1) will be referred to as the "implied consent" statute throughout this opinion. It provides that "[a]ny person who drives or is in actual physical control of a motor vehicle in this state shall be deemed to have given his consent to evidentiary testing for concentration of alcohol as defined in section 18-8004, Idaho Code, and to have given his consent to evidentiary testing for the presence of drugs or other intoxicating substances, provided that such testing is administered at the request of a peace officer having reasonable grounds to believe that person has been driving or in actual physical control of a motor vehicle in violation of the provisions of section 18-8004, Idaho Code, or section 18-8006, Idaho Code." I.C. § 18-8002(1).

decision in *State v. Diaz*, 144 Idaho 300 (2007)." In *Diaz*, this Court found that the implied consent statute provides that by driving on Idaho's roads, defendants have consented to evidentiary testing, including blood draws. Therefore, according to *Diaz*, warrantless blood draws are permissible when the officer has probable cause to believe the defendant was driving while intoxicated, and when the blood draw is performed in a medically acceptable manner and without undue force. *State v. Diaz*, 144 Idaho 300, 303, 160 P.3d 739, 742 (2007), *overruled by State v. Wulff*, 157 Idaho 416, 423, 337 P.3d 575, 582 (2014).

In the case before it, the district court found that there was probable cause to believe that Charlson was driving under the influence, and that the blood draw was done in a medically acceptable manner. Therefore, the district court concluded, "[b]ased upon *Diaz*, the [c]ourt will deny the motion to suppress."

The district court went on to note that "the [c]ourt recognizes that the main thrust of the motion to suppress is the recent *McNeely* decision[,]" which dealt with the exigency exception to the warrant requirement rather than the consent exception. However, it found that "the State does not need multiple exceptions to the warrant requirement in order to defeat the motion to suppress." The district court "decline[d] to reach the issue of exigency" because it found that the consent exception applied.

The case proceeded to jury trial, where Charlson was convicted of felony DUI. The district court then issued an Order Withholding Judgment and Order of Probation and Commitment. Charlson timely appealed that order, asserting that the district court erred by denying his motion to suppress. In the intervening period between the trial and the date of this opinion, this Court decided four cases directly addressing issues relevant to this case: *Wulff*, 157 Idaho 416, 337 P.3d 575; *State v. Halseth*, 157 Idaho 643, 339 P.3d 368 (2014); *State v. Arrotta*, 157 Idaho 773, 339 P.3d 1177 (2014); and *State v. Eversole*, 160 Idaho 239, 371 P.3d 293 (2016). Additionally, the U.S. Supreme Court issued *Birchfield v. North Dakota*, 136 S. Ct. 2160 (2016).

2. **State v. Wulff**

On October 29, 2014, this Court issued its decision in *Wulff*, 157 Idaho 416, 337 P.3d 575. In that case, Wulff was suspected of DUI and refused to provide an evidentiary breath sample to officers. *Id.* at 417, 337 P.3d at 576. He was transported to the hospital for a blood draw, was initially combative, but allowed his blood to be drawn after two security officers

4

arrived. *Id.* The State had not obtained a warrant. *Id.* His blood test showed his BAC at 0.217, and the State charged him with felony DUI. *Id.* Wulff moved to suppress the evidence, arguing that he did not consent to the blood draw and that there were no exigent circumstances to justify the draw. *Id.* The district court granted Wulff's motion to suppress, finding that Idaho's implied consent statute could not justify the warrantless blood draw in the face of Wulff's opposition. Further, the district court found that there were insufficient exigent circumstances to justify the draw. The State appealed. *Id.* at 417–18, 337 P.3d at 576–77.

This Court held that *McNeely* meant that the natural dissipation of alcohol in the blood stream over time cannot, per se, constitute an exigency sufficient to justify a warrantless blood draw. *Id.* at 419–20, 337 P.3d at 578–79. Instead, "the body's ability to metabolize alcohol is just one factor that a court can consider as part of the totality of circumstances test." *Id.* at 420, 337 P.3d at 579.

This Court then analyzed *McNeely*'s impact on Idaho's implied consent statute. It found that, while *McNeely*'s language made "it plausible to read *McNeely* as only applying to exigency[,]" the better reading is "that implied consent is no longer acceptable when it operates as a per se exception to the warrant requirement because the Court repeatedly expressed disapproval for categorical rules." *Id.* at 421, 337 P.3d at 580. Therefore, "Idaho's implied consent statute must jump two hurdles to qualify as voluntary: (1) drivers give their initial consent voluntarily; and (2) drivers must continue to give voluntary consent." *Id.* at 423, 337 P.3d at 582. This Court thus overruled *Diaz* and *State v. Woolery*, 116 Idaho 368, 775 P.2d 1210 (1989), of which *Diaz* was progeny, "to the extent that they applied Idaho's implied consent statute as an irrevocable per se rule that constitutionally allowed forced warrantless blood draws." *Wulff*, 157 Idaho at 423, 337 P.3d at 582.

### 3.     *State v. Halseth*

This Court issued its opinion in *Halseth*, 157 Idaho 643, 339 P.3d 368, on December 2, 2014. In that case, Halseth was arrested by officers who had probable cause to believe he was driving under the influence. *Id.* at 644, 339 P.3d at 369. He was transported to a hospital, where his blood was drawn without a warrant and over his repeated protests. *Id.* The district court granted a motion to suppress the blood draw evidence, and the State appealed. *Id.* This Court considered only the implied consent issue, as no party argued for exigent circumstances. *Id.* This Court concluded that:

5

[A]n implied consent statute such as Washington's and Idaho's does not justify a warrantless blood draw from a driver who refuses to consent . . . or objects to the blood draw, as did Defendant in this case. Consent to a search must be voluntary. *Schneckloth v. Bustamonte*, 412 U.S. 218, 232–33 (1973). Inherent in the requirement that consent be voluntary is the right of the person to withdraw that consent. *See McNeely*, 133 S.Ct. at 1566 (recognizing that a motorist can withdraw consent). By objecting to the blood draw, Defendant withdrew his implied consent. Therefore, the district court did not err in granting the motion to suppress.

*Id.* at 646, 339 P.3d at 371.

### 4.  *State v. Arrotta*

Sixteen days after *Halseth* was issued, this Court's opinion in *Arrotta*, 157 Idaho 773, 339 P.3d 1177, was released. In that case, Arrotta was arrested for DUI, and when he refused a breath test, he was transported to the hospital for a blood draw for which the officer had not obtained a warrant. *Id.* at 773, 339 P.3d at 1177. The district court found that express consent was required for a blood draw, rather than implied consent, and consequently granted Arrotta's motion to suppress the evidence. *Id.* at 773–74, 339 P.3d at 1177–78. The State appealed. *Id.* On appeal, this Court considered only the narrow issue of "whether, as a matter of law, implied consent can be withdrawn." *Id.* This Court cited the recent opinions of *Wulff* and *Halseth*, and concluded that "the district court did not err in holding that the consent could be withdrawn." *Id.* at 774, 339 P.3d at 1178.

### 5.  *State v. Eversole*

In *Eversole*, 160 Idaho 239, 371 P.3d 293, Eversole was suspected of being intoxicated while operating a motor vehicle. An officer administered field sobriety tests, which Eversole attempted to complete. However, Eversole refused to submit to a breath alcohol test. Subsequently, Eversole was taken to a hospital where his blood was drawn. The blood test showed that Eversole's blood alcohol content exceeded the legal limit, and he was charged with operating a motor vehicle while under the influence of alcohol. Eversole filed a motion to suppress the results of the blood draw, which was denied by the district court. The Court of Appeals vacated the district court's order denying the motion to suppress. On a petition for review, this Court analyzed the scope of the withdrawal of implied consent to a particular evidentiary test. Ultimately, this Court reversed the district court's denial of Eversole's motion to suppress, holding that "when an individual refuses to submit to an offered test for alcohol

6

concentration, the individual is withdrawing implied consent . . . to evidentiary testing in general, not merely implied consent to that particular form of testing." 160 Idaho at 246, 371 P.3d at 298.

### 6.    *Birchfield v. North Dakota*

The U.S. Supreme Court issued its opinion in *Birchfield* on June 23, 2016. 136 S. Ct. 2160. *Birchfield* was a consolidated case wherein three defendants claimed their respective states' implied consent statutes violated the Fourth Amendment to the United States Constitution by criminalizing a driver's refusal to take a breath or blood draw test to determine alcohol concentration. Writing for a five-justice majority, Justice Alito built on the history of the Court's rulings concerning the Fourth Amendment and its applicability to alcohol concentration tests. Citing the Court's earlier decision in *Skinner v. Railway Labor Executives Association*, 489 U.S. 602, 616–17 (1989), the majority stated that both breath tests and the blood draws are searches. *Birchfield*, 136 S. Ct. at 2173. Recognizing that there are exceptions to the Fourth Amendment's requirement that police obtain a warrant before a search, the Court focused on the exception for searches incident to arrest. *Id*. at 2174. Justice Alito then noted the differences between a breath test and a blood draw; specifically, he noted that a breath test does not break the skin or give the police any sample they can retain for other purposes. *Id.* at 2177–78. Observing the states' interest in keeping dangerous drivers off the roads and deterring suspects from refusing to take a breath test, the majority held that breath tests qualify as searches incident to an arrest and, as such, do not require a warrant. Accordingly, the state can criminalize the refusal to take a breath test. *Id.* at 2184. However, the Court reached a different conclusion with respect to blood tests, holding that a blood test may not be administered as a search incident to an arrest for drunk driving. *Id.*.

The Court then addressed the respondents' alternative argument that "such tests are justified based on the driver's legally implied consent to submit to them." *Id.* at 2185. First, the Court acknowledged that its prior opinions approved of implied consent laws that "impose civil penalties and evidentiary consequences on motorists who refuse to comply." *Id.* Specifically, the Court provided: "Petitioners do not question the constitutionality of those laws, and nothing we say here should be read to cast doubt on them." *Id.* However, the Court noted:

> It is another matter . . . for a State not only to insist upon an intrusive blood test, but also to impose criminal penalties on the refusal to submit to such a test. There must be a limit to the consequences to which motorists may be deemed to have consented by virtue of a decision to drive on public road.

*Id.* Noting that reasonableness is the touchstone of the Fourth Amendment analysis, the Court concluded that a motorist "cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." *Id.* at 2186.

## III. Issue on Appeal

Whether the district court erred in denying Charlson's motion to suppress evidence because the State had established that the consent exception to the warrant requirement applied to the facts of this case.

## IV. Standard of Review

[This court] review[s] a district court's order granting a motion to suppress evidence using a bifurcated standard of review. *State v. Purdum*, 147 Idaho 206, 207, 207 P.3d 182, 183 (2009). This Court accepts the trial court's findings of fact unless they are clearly erroneous, but may freely review the trial court's application of constitutional principles in light of those facts. *Id.* [This Court] must follow controlling precedent "unless it is manifestly wrong, unless it has proven over time to be unjust or unwise, or unless overruling it is necessary to vindicate plain, obvious principles of law and remedy continued injustice." *State v. Watts*, 142 Idaho 230, 232, 127 P.3d 133, 135 (2005) (quoting *Reyes v. Kit Mfg. Co.*, 131 Idaho 239, 240, 953 P.2d 989, 990 (1998)).

*Wulff*, 157 Idaho at 418, 337 P.3d at 577. In the present case, the district court did not have the benefit of this Court's recent series of decisions regarding the consent exception to the warrant requirement. However, "[w]here the lower court reaches the correct result by an erroneous theory, this Court will affirm the order on the correct theory." *Nampa & Meridian Irr. Dist. v. Mussell*, 139 Idaho 28, 33, 72 P.3d 868, 873 (2003).

In the instant case, no party challenges the facts as found by the district court despite the odd procedure upon which they were based. Based upon the record before this Court, the district court's findings of fact were not clearly erroneous and are accepted by this Court.

## V. Analysis

A. **The State met its burden of establishing that the implied consent exception to the warrant requirement applied; therefore, the district court did not err in denying Charlson's motion to suppress.**

"Requiring that a person submit to a blood alcohol test is a search and seizure under the Fourth Amendment to the United States Constitution and Article I Section 17 of the Idaho Constitution." *Wulff*, 157 Idaho at 418, 337 P.3d at 577 (citing *Schmerber v. California*, 384 U.S. 757, 767 (1966); *State v. Diaz*, 144 Idaho 300, 302, 160 P.3d 739, 741 (2007)). "'Like the Fourth Amendment, the purpose of Art. I, § 17 is to protect Idaho citizens' reasonable expectation of privacy against arbitrary governmental intrusion.'" *Id.* (quoting *State v. Holton*, 132 Idaho 501,

503, 975 P.2d 789, 791 (1999)). In this case, no party bases their arguments on the Idaho Constitution, focusing instead on the United States Constitution. Accordingly, we address the arguments only in the context of the United States Constitution. *See id.* ("We will not address the Idaho Constitution in this case because the district court's decision and the parties' arguments were confined to the United States Constitution.").

"Warrantless searches and seizures are presumptively unreasonable under the Fourth Amendment." *Id.* (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 454–55, (1971)). "To overcome this presumption of unreasonableness, the search must fall within a well-recognized exception to the warrant requirement." *Id.* (citing *Coolidge*, 403 U.S. at 455). "Exigency and consent are two well-recognized exceptions to the warrant requirement." *Id.*

1. *The consent exception to the warrant requirement justifies the warrantless draw of Charlson's blood in this case.*

> Under Idaho Code section 18–8002, a person gives implied consent to evidentiary testing, including blood alcohol testing, when that person drives on Idaho roads and a police officer has reasonable grounds to believe that person has been driving in violation of Idaho's DUI statutes. I.C. § 18–8002(1), (9)–(10).

*State v. Rios*, 160 Idaho 262, 265, 371 P.3d 316, 319 (2016). This means that "[d]rivers in Idaho give their initial consent to evidentiary testing by driving on Idaho roads voluntarily." *Wulff*, 157 Idaho at 423, 337 P.3d at 582 (citing *Diaz*, 144 Idaho at 303, 160 P.3d at 742). "However, this Court has held that a suspect can withdraw his or her statutorily implied consent to a test for the presence of alcohol." *Arrotta*, 157 Idaho at 774, 339 P.3d at 1178 (citing *State v. Halseth*, 157 Idaho 643, 646, 339 P.3d 368, 371 (2014)); *Wulff*, 157 Idaho 416, 337 P.3d 575.

In this case, no party challenges that the officer had reasonable grounds to believe that Charlson was driving in violation of Idaho's DUI statute. Thus, Charlson gave his implied consent to having his blood drawn by virtue of Idaho's implied consent statute. *See* I.C. § 18-8002(1). The warrantless blood draw conducted will therefore not violate his Fourth Amendment rights as long as that consent was voluntary. *Wulff*, 157 Idaho at 423, 337 P.3d at 582. To be voluntary, consent based upon Idaho's implied consent statute must overcome two hurdles: "(1) drivers give their initial consent voluntarily[;] and (2) drivers must continue to give voluntary consent." *Id.* The State bears the burden of proving by a preponderance of the evidence that consent was voluntary. *United States v. Matlock*, 415 U.S. 164, 177 (1974). Whether consent was voluntary is determined by examining a totality of the circumstances. *Wulff*, 157 Idaho at 422, 337 P.3d at 581 (2014) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973)).

In the present case, Charlson impliedly consented to evidentiary testing by driving on Idaho's roads. Based upon the totality of the circumstances evidenced in the record, his consent was voluntary and continued through to the blood draw.

Charlson argues that, because it is the State's burden to establish the application of the consent exception, it is similarly the State's burden to establish that Charlson's consent was continuous and never withdrawn. Thus, Charlson argues, because the State did not present any evidence expressly indicating that Charlson's consent was voluntary and continuous, the State failed to meet that burden and the blood draw was unreasonable. The State in this case did meet its burden, as the totality of the circumstances in the record establishes that Charlson voluntarily consented by a preponderance of the evidence.

This case presents evidence that Charlson drove on an Idaho road. There is no evidence whatsoever that he did so involuntarily. Charlson asserts that the State must affirmatively prove that he drove voluntarily, *i.e.*, that his driving was not the result of coercion, duress, or something similar. However, it is not the State's burden to affirmatively prove that Charlson drove voluntarily. Such a rule would serve neither the interests of justice nor judicial economy. This record, for instance, presents no evidence whatsoever that Charlson drove involuntarily. Should the facts of a particular case give any indication that the defendant did not drive voluntarily, then courts should consider such an argument. Absent any such indication, this Court need not engage in the analysis.[2]

Further, because courts cannot look into the minds of defendants, the only way to affirmatively establish that consent is continuously given, as advocated for by Charlson, would be to have officers repeatedly ask defendants if they continue to consent. This Court and the United States Supreme Court have held that officers do not have to inform defendants of their right to refuse to consent. *State v. Christofferson*, 101 Idaho 156, 158, 610 P.2d 515, 517 (1980) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 229 (1973)). If officers are not required to

---

[2] This interpretation is consistent with this Court's precedent. In *Wulff*, *Halseth*, and *Arrotta*, the State did not prove that the defendants had initially consented voluntarily or that the defendant continued to do so. *See Wulff*, 157 Idaho 416, 337 P.3d 575; *Halseth*, 157 Idaho 643, 339 P.3d 368; and *Arrotta*, 157 Idaho 773, 339 P.3d 1177. Rather, at some point, the defendants withdrew that consent. *See Wulff*, 157 Idaho 416, 337 P.3d 575; *Halseth*, 157 Idaho 643, 339 P.3d 368; and *Arrotta*, 157 Idaho 773, 339 P.3d 1177. Had the rule operated as Charlson desires, this Court's analysis would have begun and ended with finding that the State had not proven that the driving was voluntary. Instead, this Court allowed the State to rest on the presumption that one typically drives voluntarily, and examined whether revoking consent later could serve to sever the statutorily implied consent. *See Wulff*, 157 Idaho 416, 337 P.3d 575; *Halseth*, 157 Idaho 643, 339 P.3d 368; and *Arrotta*, 157 Idaho 773, 339 P.3d 1177.

inform a defendant of their right to refuse to consent, it logically follows that they do not have to affirmatively ask the defendant whether or not he or she does consent. Requiring the State to affirmatively prove continuous consent would thus run afoul of this Court's precedent. Indeed, in *Rios*, this Court stated that "[u]nder Idaho law, a driver's implied consent continues if it is not revoked before the time of evidentiary testing." 160 Idaho at 164, 371 P.3d at 319–20. Accordingly, where no evidence is presented indicating that consent was not voluntary, the statutorily provided implied consent is valid and remains in place until affirmatively withdrawn.

In the present case, no evidence exists indicating that Charlson withheld or withdrew his statutorily provided implied consent. The evidence simply shows that Charlson drove and that Dep. Talitian had probable cause to believe he was driving under the influence. There is nothing in the record indicating that Charlson's driving was not voluntary. There is nothing indicating that Charlson ever withdrew his implied consent (which was statutorily generated from his voluntary driving), nor is there a contention that Dep. Talitian told Charlson that he was required to submit to the blood test. The totality of the circumstances indicates that Charlson voluntarily consented to evidentiary testing.

Charlson points to Dep. Talitian's report, which indicates that Charlson either could not or would not provide a second breath sample. However, one line in that report is not dispositive evidence. There is nothing indicating that his refusal was more likely than his inability. Charlson could have called the deputy as a witness and asked him, but declined to do so. It is not reasonable to infer evidence of revocation of consent from that one line in Dep. Talitian's report, especially given that it immediately follows a statement indicating that Charlson affirmatively consented to the first evidentiary breath test. Similarly, there is no evidence indicating that Charlson did not consent to the blood draw, or withdrew his consent at some point before its occurrence.

Charlson argues that the State should not be allowed to rely upon evidence adduced at trial to prove that the blood draw was voluntary when it did not present that evidence at the hearing on the motion to suppress. This is in reference to the State's recitation of testimony of the phlebotomist at trial. The State points to the phlebotomist's testimony as indicative of a lack of evidence that Charlson objected to the blood draw. Charlson is correct, the State cannot rely upon evidence adduced at trial to support its arguments regarding the motion to suppress.

11

However, the State does not need the testimony of the phlebotomist in order to show the voluntary nature of the blood draw. There is absolutely no evidence suggesting that the blood draw was non-consensual. Given the statutorily provided implied consent, the totality of the circumstances establishes by a preponderance of the evidence that the blood draw was consensual. The circumstances are that a blood draw occurred, that Charlson had consented to one evidentiary test, and that Charlson did not revoke his consent before the blood draw. The totality of the circumstances indicates that the blood draw was consensual and that the consent was voluntary.

This logic is consistent with this Court's practice of examining whether the withdrawal of consent eliminates implied consent, rather than examining whether it is further evidence that the State has failed to meet its burden of establishing affirmative and continuous consent. *See, e.g.*, *Wulff*, 157 Idaho 416, 337 P.3d 575; *Halseth*, 157 Idaho 643, 339 P.3d 368; and *Arrotta*, 157 Idaho 773, 339 P.3d 1177. There is sufficient evidence in the record to show, by a preponderance of the evidence, that Charlson's implied consent was voluntary. Therefore, the warrantless blood draw was proper.

## VI. CONCLUSION

When the totality of the circumstances in this case are considered, the State established voluntary consent to evidentiary testing sufficient to obviate the need for a warrant to draw Charlson's blood. Although the district court did not have the benefit of this Court's recent relevant opinions, it nonetheless reached the correct result. Therefore, its order denying Charlson's motion to suppress the evidence against him is affirmed.

Chief Justice J. JONES and Justices EISMANN, HORTON and Justice *pro tem* WALTERS, CONCUR.