# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 42985

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2017 Opinion No. 11 |
| | ) | |
| Plaintiff-Appellant, | ) | Filed: February 9, 2017 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| GABRIEL ORTEGA-VASTIDA, | ) | |
| | ) | |
| Defendant-Respondent. | ) | |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Jerome County. Hon. John K. Butler, District Judge.

Order granting motion to suppress, <u>reversed</u> and <u>case remanded</u>.

Hon. Lawrence G. Wasden, Attorney General; Theodore S. Tollefson, Deputy Attorney General, Boise, for appellant.

Eric D. Fredericksen, State Appellate Public Defender; Erik R. Lehtinen, Deputy Appellate Public Defender, Boise, for respondent.

_____

GRATTON, Chief Judge

The State appeals from the district court's order granting Gabriel Ortega-Vastida's motion to suppress. For reasons explained below, we reverse the district court's order and remand the case for further proceedings consistent with this opinion.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Officer Kelly suspected Ortega-Vastida was driving under the influence. Officer Kelly stopped Ortega-Vastida and Officer Summers performed field sobriety tests. Ortega-Vastida failed the tests, and Officer Summers arrested Ortega-Vastida for driving under the influence.

At the jail, Officer Kelly played Ortega-Vastida an audio recording of the ALS advisory in Spanish. Officer Kelly performed breath tests on Ortega-Vastida, but Ortega-Vastida did not provide sufficient breath samples. Officer Kelly spoke fluent Spanish and told Ortega-Vastida

that he "would like to take him to the hospital to have a blood sample done" and "asked if he was willing to do it." Ortega-Vastida did not object, stood up, and went with Officer Kelly to the hospital.

At the hospital, Officer Kelly reminded Ortega-Vastida of the potential civil penalties of refusing the blood draw, translated a consent-to-draw card into Spanish, and gave the card to Ortega-Vastida. Ortega-Vastida signed the card, and the hospital staff drew Ortega-Vastida's blood. The test of Ortega-Vastida's blood revealed a blood alcohol content of .370.

The State charged Ortega-Vastida with felony driving under the influence, Idaho Code Sections 18-8004 and 18-8005(9). Ortega-Vastida moved to suppress evidence of the results of the blood test. The district court granted the motion, holding that Ortega-Vastida's consent to draw his blood was not voluntary under the totality of the circumstances. The State timely appeals.

## II.

## ANALYSIS

The State asserts the district court erred in granting Ortega-Vastida's motion to suppress. The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

The State argues the district court incorrectly interpreted *Missouri v. McNeely*, 133 S. Ct. 1552 (2013) and *State v. Wulff*, 157 Idaho 416, 337 P.3d 575 (2014) to eliminate implied consent as it applies to warrantless blood draws.

Requiring a person to submit to a blood draw for evidentiary testing is a search and seizure under the Fourth Amendment to the United States Constitution and Article I, Section 17 of the Idaho Constitution. *Schmerber v. California*, 384 U.S. 757, 767 (1966); *Wulff*, 157 Idaho at 418, 337 P.3d at 577. Therefore, warrantless forced blood draws generally violate both constitutions. *See McNeely*, 133 S. Ct. at 1558; *Wulff*, 157 Idaho at 419, 337 P.3d at 578.

2

However, the warrant requirement does not apply if the person subjected to the search consents to the search. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973); *Wulff*, 157 Idaho at 423, 337 P.3d at 582. "The State bears the burden of proving by a preponderance of the evidence that consent was voluntary." *State v. Charlson*, 160 Idaho 610, 617, 377 P.3d 1073, 1080 (2016). "Whether consent was voluntary is determined by examining a totality of the circumstances." *Id.*

Idaho's implied consent statute, I.C. § 18-8002(1), states that "any person who drives or is in actual physical control of a motor vehicle in this state shall be deemed to have given his consent to evidentiary testing for concentration of alcohol . . . ." Before *McNeely*, the Idaho Supreme Court maintained that statutorily implied consent satisfied the consent exception to the warrant requirement and actions or statements revoking implied consent were ineffective. *State v. Diaz*, 144 Idaho 300, 303, 160 P.3d 739, 742 (2007), *overruled by Wulff*, 157 Idaho 416, 337 P.3d 575; *State v. Woolery*, 116 Idaho 368, 373, 775 P.2d 1210, 1215 (1989), *overruled by Wulff*, 157 Idaho 416, 337 P.3d 575. In *McNeely*, the United States Supreme Court held that "the natural dissipation of alcohol in the bloodstream does not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant." *McNeely*, 133 S. Ct. at 1568.

Following *McNeely*, the Idaho Supreme Court held that, "when it operates as a per se exception to the warrant requirement," Idaho's implied consent statute does not analyze the voluntariness of consent and is, therefore, inconsistent with the U.S. Supreme Court's repeated "disapproval for categorical rules." *Wulff*, 157 Idaho at 421, 337 P.3d at 580. Accordingly, the Court held, "Idaho's implied consent statute must jump two hurdles to qualify as voluntary: (1) drivers give their initial consent voluntarily and (2) drivers must continue to give voluntary consent." *Id.* at 423, 337 P.3d at 582. The Court overruled its prior implied consent cases "to the extent that they applied Idaho's implied consent statute as an irrevocable per se rule." *Id.*

In regard to the first hurdle, the *Wulff* Court stated: "Drivers in Idaho give their initial consent to evidentiary testing by driving on Idaho roads voluntarily." *Id.* In regard to the second hurdle, the Idaho Supreme Court has since clarified its holding in *Wulff*. In *State v. Eversole*, 160 Idaho 239, 243, 371 P.3d 293, 297 (2016), the Court held that Idaho's implied consent statute remains valid and consent implied under the statute remains voluntary so long as that consent may be withdrawn. Thus, "under current Idaho law, a defendant's refusal, protest, or objection to alcohol concentration testing terminates the implied consent given under Idaho's implied consent statute." *Id.* at 242, 371 P.3d at 296. Further, in *State v. Rios*, 160 Idaho 262,

3

266, 371 P.3d 316, 320 (2016), the Court recognized that "implied consent may be withdrawn where a suspect refuses to consent." Finally, in *Charlson*, the Court held that "the statutorily provided implied consent is valid and remains in place until affirmatively withdrawn." *Charlson*, 160 Idaho at 168, 377 P.3d at 1081. Thus, a driver on Idaho roads impliedly consents to a warrantless blood draw unless he affirmatively withdraws his statutorily implied consent by refusing, objecting to, or protesting the blood draw.

In this case, the district court interpreted *McNeely* and *Wulff* to eliminate implied consent as an exception to the warrant requirement. According to the court, implied consent continues to operate as a per se exception to the warrant requirement even if such consent may be withdrawn. The court stated: "To the extent that the Idaho Supreme Court has affirmed the propriety of the implied consent statute it has merely 'upheld the statutory consequences placed on defendants who refuse to comply.'" (quoting *Wulff*, 157 Idaho at 423, 337 P.3d at 582). Thus, the court did not analyze implied consent as an exception to the warrant requirement in this case. Rather, the court weighed sixteen "factors adduced from the totality of the circumstances," and held that Ortega-Vastida did not voluntarily consent to the warrantless blood draw in this case.

The district court incorrectly interpreted *McNeely* and *Wulff* to eliminate implied consent as an exception to the warrant requirement. Implied consent remains a valid exception to the warrant requirement so long as it may be withdrawn. *See, e.g.*, *Eversole*, 160 Idaho at 243, 371 P.3d at 297. Because the court incorrectly interpreted *McNeely* and *Wulff*, it failed to recognize that implied consent applied in this case. Ortega-Vastida voluntarily drove on an Idaho road. Thus, Ortega-Vastida voluntarily gave his initial consent to a test for the presence of alcohol. Further, the district court found that Ortega-Vastida "acquiesced to [Officer Kelly's request to go to the hospital] for a blood draw by standing and following the officer to his vehicle . . . [,] there is no evidence of coercion on the part of Officer Kelly. There is no evidence that [Ortega-Vastida] objected or was in anyway resistant to going to the hospital." Additionally, the district court found that Officer Kelly left Ortega-Vastida's decision to sign the consent-to-draw card to his discretion and he "signed the consent-to-draw card at the hospital."[1] There is no

---

[1]     By signing the consent-to-draw card, Ortega-Vastida likely gave actual consent to the blood draw. *See State v. Rios*, 160 Idaho 262, 267, 371 P.3d 316, 321 (2016) ("Where . . . a suspect is presented with a consent form for a blood draw, he or she is faced with two options: (1) sign the form and give actual consent for the blood draw, or (2) refuse to sign, withdraw implied consent, and accept any penalties for such a refusal under the implied consent statute.").

4

evidence that Ortega-Vastida affirmatively withdrew his initial, implied consent by refusing, objecting to, or protesting the actual blood draw. Rather, the evidence shows that Ortega-Vastida continued to give voluntary consent until the hospital staff drew his blood. Thus, the district court erred in failing to apply implied consent.

## III.

## CONCLUSION

The district court incorrectly interpreted *McNeely* and *Wulff* and, therefore, failed to recognize that implied consent applied in this case. The district court's order granting Ortega-Vastida's motion to suppress is reversed and the case is remanded for further proceedings consistent with this opinion.

Judge MELANSON and Judge HUSKEY **CONCUR**.

---

However, on appeal, the State does not assert Ortega-Vastida gave actual consent to the blood draw by signing the consent-to-draw card or that the district court erred in failing to hold that Ortega-Vastida gave actual consent to the blood draw by signing the consent-to-draw card.