**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 46674**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: March 26, 2020** |
| Plaintiff-Respondent, | ) |
| | ) **Karel A. Lehrman, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| JENNIFER NICOLE HULL, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Steven Hippler, District Judge.

Judgment of conviction for driving under the influence, <u>affirmed</u>.

Fyffe Law; Robyn A. Fyffe, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Chief Judge

Jennifer Nicole Hull appeals from the judgment of conviction entered upon her conditional guilty plea to driving under the influence (DUI). Hull argues the district court erred when it denied her motion to suppress. Because Hull's consent to a blood draw was voluntary and there is no evidence of coercion, we affirm the district court's denial of Hull's motion to suppress and judgment of conviction.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Hull was involved in a single vehicle accident and was transported to the hospital. At the hospital, a police officer visited Hull and conducted a DUI investigation, during which the officer smelled alcohol. Hull admitted to drinking alcohol, but she could not remember how much she drank, when she started to drink, or when she last had a drink. The officer explained he was not arresting Hull but was investigating a DUI and would read her an advisory regarding

1

her rights. The officer then read Hull the "Notice of Suspension for Failure of Evidentiary Testing," otherwise known as the ALS advisory form, which included an explanation of Hull's right to refuse evidentiary testing and the consequences of refusal.

While the officer was reading the ALS advisory form, Hull acknowledged her understanding by nodding and confirming. Once the officer finished, he asked if Hull understood what he read. Hull said: "Yeah." The officer then informed Hull that he intended to collect a blood sample as evidence, wherein the following exchange occurred:

| | |
|---|---|
| Hull: | Can I ask a question? |
| Officer: | You can ask a question. |
| Hull: | Is that normal? (To nurse and gesturing at the blood kit). |
| Nurse: | This? Process? |
| Hull: | No. Well, like, is it normal to give him a blood sample? (To nurse). |
| Officer: | Well . . . |
| Nurse: | You are required by law. So, yeah. |
| Hull: | Oh. Ok, ok. |
| Officer: | Yeah, you're required by law to . . . . |
| Hull: | Totally fine, I was just asking. |
| Officer: | Remember that portion I read about refusing in it? |
| Hull: | Oh, I know, I know. |
| Nurse: | This happens all the time. (To Defendant). |
| Officer: | I'm not arresting you. I'm just explaining it to you. |
| Hull: | Oh, well. I know, I know. |

Hull was cooperative during the blood draw, and at no time before or after the draw did she verbally or physically resist or object. The sample was analyzed and revealed a 0.34 blood alcohol concentration.

The State charged Hull with felony driving under the influence, Idaho Code § 18-8004C, with an enhancement for excessive alcohol concentration. Hull was also charged with misdemeanor possession of an open container, I.C. § 23-505. Hull moved to suppress the evidence from the blood draw. After a hearing, the district court denied Hull's motion to suppress.

Hull entered a conditional guilty plea to the DUI charge, and in exchange, the State dismissed the misdemeanor open container charge. As part of the agreement, Hull reserved the right to appeal the denial of her motion to suppress. The district court imposed a unified sentence of five years, with two years determinate. The district court suspended the sentence for a five-year term of probation. Hull timely appeals.

2

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

Hull argues the district court erred in denying her motion to suppress. Hull claims her consent for a blood draw was involuntary because the officer told Hull she was required to submit to the blood draw. As such, Hull asserts the blood draw constituted an illegal search and seizure. In response, the State contends that Hull consented to alcohol concentration testing under Idaho's implied consent statute, and Hull never withdrew this consent.

Requiring a person to submit to a blood draw for evidentiary testing is a search and seizure under the Fourth Amendment to the United States Constitution and Article I, Section 17 of the Idaho Constitution. *Schmerber v. California*, 384 U.S. 757, 767 (1966); *State v. Wulff*, 157 Idaho 416, 418, 337 P.3d 575, 577 (2014). Therefore, warrantless forced blood draws generally violate both constitutions. *See Missouri v. McNeely*, 569 U.S. 141, 147 (2013); *State v. Eversole*, 160 Idaho 239, 242, 371 P.3d 293, 296 (2016). However, the warrant requirement does not apply if the person subjected to the blood draw consents to the search. *Schneckloth v. Bustamonte*, 412 U.S. 218, 221-22 (1973); *Wulff*, 157 Idaho at 419, 337 P.3d at 578. "The State bears the burden of proving by a preponderance of the evidence that consent was voluntary." *State v. Charlson*, 160 Idaho 610, 617, 377 P.3d 1073, 1080 (2016). "Whether consent was voluntary is determined by examining a totality of the circumstances." *Id.*

Fifty states, including Idaho, have adopted implied consent laws as a condition for exercising the privilege of driving upon the states' roads and highways. Idaho's implied consent law is set forth in I.C. § 18-8002(1), which states, in relevant part: "Any person who drives or is

3

in actual physical control of a motor vehicle in this state shall be deemed to have given his consent to evidentiary testing for concentration of alcohol . . . ." In *McNeely*, the United States Supreme Court held that "the natural dissipation of alcohol in the bloodstream does not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant." *McNeely*, 569 U.S. at 165. Following *McNeely*, the Idaho Supreme Court held that a per se implied consent exception is a categorical rule disapproved by the Supreme Court. *Wulff*, 157 Idaho at 421, 337 P.3d at 580. Accordingly, the Court held: "Idaho's implied consent statute must jump two hurdles to qualify as voluntary: (1) drivers give their initial consent voluntarily and (2) drivers must continue to give voluntary consent." *Id.* at 423, 337 P.3d at 582. The Court overruled its prior implied consent cases "to the extent that they applied Idaho's implied consent statute as an irrevocable per se rule." *Id.*

With regard to the first hurdle, the *Wulff* Court stated: "Drivers in Idaho give their initial consent to evidentiary testing by driving on Idaho roads voluntarily." *Id.* With regard to the second hurdle, the Idaho Supreme Court has since clarified its holding from *Wulff*. In *State v. Eversole*, 160 Idaho 239, 371 P.3d 293 (2016), the Court explained the consent implied under Idaho's statute is voluntary only so long as that consent may be withdrawn. *Id.* at 242, 371 P.3d at 296. Thus, "under current Idaho law, a defendant's refusal, protest, or objection to alcohol concentration testing terminates the implied consent given under Idaho's implied consent statute." *Id.* Further, in *State v. Rios*, 160 Idaho 262, 371 P.3d 316 (2016), the Court recognized that "implied consent may be withdrawn where a suspect refuses to consent." *Id.* at 266, 371 P.3d at 320. Finally, in *Charlson*, the Court held that "the statutorily provided implied consent is valid and remains in place until affirmatively withdrawn." *Charlson*, 160 Idaho at 618, 377 P.3d at 1081. Thus, a driver on Idaho roads impliedly consents to a warrantless blood draw unless he affirmatively withdraws his statutorily implied consent by refusing, objecting to, or protesting the blood draw.

Here, Hull does not contest that she voluntarily drove her automobile on Idaho roads, thereby giving her initial consent to evidentiary testing. The issue is whether Hull revoked her initial consent. Although Idaho precedent has held that a defendant may withdraw his or her consent by refusing, objecting to, or protesting the blood draw, that issue is not presented on appeal. Hull argues only that her continued consent was not voluntary because she was coerced by the nurse's and officer's statements. Specifically, Hull claims it was coercion when, after

4

Hull asked if it was normal to give a blood sample, the nurse and the officer both responded she was "required by law." These comments, according to Hull, rendered any continuing consent involuntary because Hull believed she had no right to refuse the blood draw.

The district court addressed Hull's narrow argument in its order denying Hull's motion to suppress, and the court concluded Hull's position was not supported by the record. We agree. The officer read Hull her rights under Idaho law, which included her right to refuse a blood test and the consequences for doing so. Hull acknowledged her understanding by nodding and confirming while the officer spoke. Once the officer finished and asked if Hull understood what he read, Hull said, "Yeah." While the nurse and the officer stated Hull was "required by law" to submit to the blood draw, the officer immediately clarified the statement by saying: "Remember that portion I read about refusing in it?" When Hull responded "Oh, I know, I know," the officer also indicated he was not arresting Hull, but rather, was simply explaining the situation to her. The facts therefore support the district court's finding that Hull's consent to the blood draw was not coerced.

In the alternative, Hull asserts that the district court failed to consider the totality of circumstances. Hull claims the evidence showed that she was in obvious pain, could not clearly answer questions, and exhibited delayed processing and memory problems. According to Hull, her vulnerable subjective state made the consent involuntary. The district court addressed Hull's argument regarding her subjective state in a footnote to its memorandum decision on the motion to suppress. There, the district court explained Hull did not present any evidence of her subjective understanding. Even with Hull's objective expression of pain and delayed processing, the district court refused to infer that Hull did not understand her right to refuse the blood draw. The district court found that all objective signs demonstrated that Hull was aware she could refuse the blood draw. The district court therefore considered Hull's subjective belief and the totality of circumstances in this case, and Hull has not shown error in the district court's findings.

The district court did not err when it denied Hull's motion to suppress. Hull gave her initial consent voluntarily as a result of driving on Idaho roads, and such voluntary consent continued through the time her blood was obtained because it was not expressly revoked. Hull was informed of her right to refuse a blood test under Idaho law and then was reminded of this right to refuse. Hull was coherent and indicated she understood what the officer was saying. Hull did not affirmatively revoke her consent, and Hull has not shown she was pressured by the

5

officer or the nurse, such that Hull's continued consent was coerced. The district court therefore did not err when it denied Hull's motion to suppress and concluded: "In sum, the totality of circumstances indicate that Defendant gave her initial statutorily derived consent voluntarily and such voluntary consent continued through the time her blood was obtained."

## IV.

## CONCLUSION

Because Hull's consent to a blood draw was voluntary and there is no evidence of coercion, we affirm the district court's denial of Hull's motion to suppress and judgment of conviction.

Judge GRATTON and Judge LORELLO **CONCUR**.