JUSTICE BOLICK,
opinion of the Court:
¶ 1 This case considers the constitutionality of A.R.S. § 28-1321(C), the “unconscious clause,” which allows law enforcement officials to make or direct nonconsensual blood draws from unconscious DUI suspects. We hold that the provision is unconstitutional as applied to the facts of this case.
¶2 We also consider whether the good-faith exception to the exclusionary rule applies here. Following a collision after which defendant was airlifted to Nevada, a blood draw was taken at the request of Arizona law enforcement officials, raising the question, unresolved in the trial or appeals court, of which state’s law applies to decide whether the blood test results should be suppressed. We hold that under Arizona law, the good-faith exception would not apply, and thus if our state’s law applies, the evidence from the blood draw must be suppressed. However, we remand to the trial court to determine which jurisdiction’s law applies and, if it is Nevada law, whether it supports application of the good-faith exception.
I.
¶ 3 On September 17, 2012, Don Jacob Havatone drove his SUV, with four other passengers, into an oncoming vehicle on Route 66 northeast of Kingman. A witness driving behind Havatone testified that before the collision the SUV was driving “erratically” for several miles and repeatedly crossed the center line. The other vehicle was occupied only by its driver, L.S. After the collision, L.S. saw a man with his foot caught in the SUV’s windshield crawl out over the hood and lie down in front of the vehicle. She saw a second occupant, later identified as Hava-tone, exit the driver’s side of the SUV and lie down behind the vehicle.
¶ 4 Department of Public Safety (“DPS”) Officer M.P. responded to the scene. He approached Havatone, whom medics were treating, Havatone confirmed he was driving the SUV. When M.P. asked Havatone what happened, Havatone did not respond. M.P. detected a “heavy odor” of alcohol emanating from all the SUV’s occupants, including Ha-vatone. M.P. looked inside the SUV and saw numerous beer cans and an open bottle of liquor.
¶ 5 Havatone was airlifted to a Las Vegas hospital for treatment. Without seeking a warrant, Officer M.P. followed DPS policy and instructed DPS dispatch to request that Las Vegas police officers obtain a blood sample. Havatone was unconscious when the blood sample was taken. The sample showed a blood alcohol concentration (“BAC”) of 0.212.
¶ 6 The State charged Havatone with driving under the influence of intoxicating liquor while his license was suspended or revoked, aggravated driving under the extreme influence of intoxicating liquor with a BAO of 0.20 or more with a suspended license, aggravated assault of L.S. with a deadly weapon or dangerous instrument, recklessly endangering L.S. with a substantial risk of imminent death, and four counts of aggravated assault of the occupants of his vehicle with a deadly weapon or dangerous instrument.
¶ 7 Havatone moved to suppress the blood test results, arguing that the test was a warrantless search prohibited by the Fourth Amendment. The trial court denied the motion, finding the search permissible under both Arizona and Nevada law because the police had probable cause to believe that Havatone was driving while intoxicated and both states’ “implied consent” laws authorize blood draws from unconscious DUI suspects. See A.R.S. § 28-1321(0); Nev. Rev. Stat. § 4840.160(1), (3). Alternatively, the court ruled that even if a warrant was required, the police acted in reliance on statutes and eases in effect when the blood was seized, thus satisfying the good-faith exception to the exclusionary rule.
*509 ¶ 8 The jury found Havatone guilty of four offenses as charged and guilty of lesser included offenses for other charges. The trial court imposed concurrent sentences of 17.5 years in prison.
¶ 9 On appeal, Havatone argued that the statute authorizing his blood draw while unconscious violated his Fourth Amendment rights. The court of appeals affirmed. It did not reach the constitutional question but reasoned that even if the blood draw violated Havatone’s Fourth Amendment rights, it was shielded by the good-faith exception to the exclusionary rule. State v. Havatone, 1 CA-CR 14-0223, 2015 WL 6472357, at *5 ¶ 20, *6 ¶ 25 (Ariz. App. Oct. 27, 2015) (“[T]he search was objectively reasonable in either state, so we—like the trial court—need not decide whether Arizona or Nevada law applies.”).
¶ 10 We granted review because the issues presented are of first impression and statewide importance. We have jurisdiction under article 6, section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.
II.
¶ 11 We review rulings on motions to suppress for an abuse of discretion, considering only the evidence presented at the suppression hearing and viewing it in the light most favorable to sustaining the trial court’s ruling. State v. Butler, 232 Ariz. 84, 87 ¶ 8, 302 P.3d 609, 612 (2013). “An error of law constitutes an abuse of discretion.” State v. Bernstein, 237 Ariz. 226, 228 ¶ 9, 349 P.3d 200, 202 (2015). Both a statute’s constitutionality under the Fourth Amendment and the applicability of the good-faith exception to the exclusionary rule are questions of law that we decide de novo. Gallardo v. State, 236 Ariz. 84, 87 ¶ 8, 336 P.3d 717, 720 (2014); State v. Crowley, 202 Ariz. 80, 91 ¶ 32, 41 P.3d 618, 629 (App. 2002).
¶ 12 Arizona’s “implied consent” statute, A.R.S. § 28-1321, reads in pertinent part:
A. A person who operates a motor vehicle in this state gives consent ... to a test or tests of the person’s blood, breath, urine or other bodily substance for the purpose of determining alcohol concentration or drug content if the person is arrested for any offense arising out of acts alleged to have been committed ... while the person was driving or in actual physical control of a motor vehicle while under the influence of intoxicating liquor or drugs. The test or tests chosen by the law enforcement agency shall be administered at the direction of a law enforcement officer having reasonable grounds to believe that the person was driving or in actual physical control of a motor vehicle in this state ... (1) [while] under the influence of intoxicating liquor or drugs.
[[Image here]]
C. A person who is dead, unconscious or otherwise in a condition rendering the person incapable of refusal is deemed not to have withdrawn the consent provided by subsection A....
Subsection C, at issue here, is known as the “unconscious clause.”
¶ 13 After we granted review, the State acknowledged that the unconscious clause is unconstitutional as applied to the facts of the case. The State takes the position that blood may be taken from a DUI suspect under the unconscious clause only if ease-specific exigent circumstances exist. We agree.
¶ 14 A blood draw taken or directed by the government implicates privacy rights protected by the Constitution. The Fourth Amendment provides,
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
*510 U.S. Const, amend. IV.[1]
¶ 15 In Missouri v. McNeely, — U.S. —, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013), decided after the arrest here, the United States Supreme Court considered the constitutionality of nonconsensual, warrantless blood draws in DUI cases where police relied solely upon the natural dissipation of alcohol in the blood. Such a “compelled physical intrusion” beneath the skin and into the veins “to obtain a sample of his blood for use as evidence in a criminal investigation ... implicates an individual’s ‘most personal and deep-rooted expectations of privacy.’ ” Id. at 1558 (citation omitted). The Court confirmed the view, expressed in prior cases, that such searches could be justified only by exigent circumstances. “In short,” the Court ruled, “while the natural dissipation of alcohol in the blood may support a finding of exigency in a specific case, ... it does not do so categorically. Whether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances.” Id. at 1563.
¶ 16 Following McNeely, we ruled in State v. Butler that Arizona’s implied consent statute, A.R.S. § 28-1321, does not relieve the state of establishing voluntary consent or another exception to the warrant requirement, such as exigent circumstances, to justify warrantless blood draws from DUI suspects. 232 Ariz. at 87-88 ¶¶ 12-13, 18, 302 P.3d at 612-13. Furthermore, in Birchfield v. North Dakota, — U.S. —, 136 S.Ct. 2160, 2180, 195 L.Ed,2d 560 (2016), the United States Supreme Court noted that the exigency exception “always requires case-by-case determinations.”
¶ 17 McNeely and Butler establish that absent an exception to the warrant requirement, nonconsensual, warrantless blood draws from DUI suspects are unconstitutional. We conclude that the unconscious clause can be constitutionally applied only when case-specific exigent circumstances prevent law enforcement officers from obtaining a warrant. Here, the State concedes that exigent circumstances did not exist. Rather, Officer M.P. testified he was following department practice to procure a blood draw anytime a DUI suspect was sent out of state for emergency treatment. Because the test was taken pursuant to a blanket policy rather than the presence of ease-specific exigent circumstances, Havatone’s Fourth Amendment rights were violated.
¶ 18 Our decision does not vitiate § 28-1321(0). Where police have probable cause to believe a suspect committed a DUI, a nonconsensual blood draw from an unconscious person is constitutionally permissible if, under the totality of the circumstances, law enforcement officials reasonably determine that they cannot obtain a warrant without significant delay that would undermine the effectiveness of the testing. Cf. McNeely, 133 S.Ct. at 1561 (noting that “where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so”).
III.
¶ 19 Although the dissent attempts gamely to resuscitate the argument, ¶ 40, the State expressly concedes that the record “does not show exigent circumstances beyond the natural dissipation of alcohol in Appellant’s blood.” Hence, the search violated the Fourth Amendment and the only issue is whether the good-faith exception to the exclusionary rule applies. Cf. State v. Valenzuela, 239 Ariz. 299, 309 ¶ 31, 371 P.3d 627, 637 (2016) (“[Wlhen law enforcement officers act with an objectively reasonable good-faith belief that their conduct is lawful, deterrence is unnecessary and the exclusionary rule does not apply.”). To resolve that issue, we must decide whether before McNeely, DPS reasonably applied a policy of directing warrant- *511 less blood draws from unconscious DUI suspects being flown out of state for medical treatment based on the belief that the natural dissipation of alcohol in the blood constituted a per se exigency. The State bears the burden of proving the good-faith exception applies. See, e.g., Crowley, 202 Ariz. at 91 ¶ 32, 41 P.3d at 629.
¶ 20 The State argues that the blood test results should not be suppressed for two reasons: (1) at the time of the blood draw here, the unconscious clause expressly authorized the blood draw and had not been ruled unconstitutional; and (2) nonconsensual, warrantless blood draws were permitted based on natural alcohol dissipation in the blood prior to McNeely, which was not decided until after Havatone’s blood was taken. For those reasons, the State asserts that the blood draw satisfies the good-faith exception to the exclusionary rule. We disagree. DPS should have known that routinely directing blood draws from DUI suspects who were sent out of state for emergency treatment, without making a ease-specific determination whether a warrant could be timely secured, was either impermissible or at least constitutionally suspect. Thus, the good-faith exception does not apply.
¶21 The dissent suggests that the good-faith exception applies unless the police officers exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights. See ¶ 50 (citing Davis v. United States, 564 U.S. 229, 240, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011)). Because the exclusionary rule also serves to deter “recurring or systemic negligence,” the good-faith exception will not apply in such circumstances. See Herring v. United States, 555 U.S. 135, 144, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009); see also Davis, 564 U.S. at 239, 131 S.Ct. 2419 (relying on Herring in concluding that isolated, nonrecurring police negligence “lacks the culpability required to justify the harsh sanction of exclusion”). Such “recurring or systemic negligence” is present in this case.
¶ 22 Here, the officer followed DPS policy and training that seeking a warrant was unnecessary under the circumstances. When the Fourth Amendment violation occurred not as the result of an officer’s fact-specific determination that obtaining a warrant is infeasible but pursuant to department practice making such determination unnecessary, we impute to the law enforcement agency the responsibility to assure that unlawful seizures will not occur. See Davis, 564 U.S. at 240, 131 S.Ct. 2419 (contrasting “ ‘recurring or systemic negligence’ on the part of law enforcement,” with conduct that “involves only simple, ‘isolated’ negligence”). “We should reasonably presume that law enforcement officials, who stand in the best position to monitor such errors as occurred here, can influence mundane communication procedures in order to prevent those errors. That presumption comports with the notion that the exclusionary rule exists to deter future police misconduct systemically.” Arizona v. Evans, 514 U.S. 1, 21, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995) (Stevens, J., dissenting) (citing, inter alia, Stone v. Powell, 428 U.S. 465, 492, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976)); accord State v. Mitchell, 234 Ariz. 410, 419 ¶ 31, 323 P.3d 69, 78 (App. 2014) (good-faith exception provides “meaningful deterrence because ... it incentivizes law enforcement to err on the side of constitutional behavior”). Suppression of the blood test results here will have a deterrent effect on police practices that fail to take individual circumstances into account as the United States Supreme Court has long required. Cf. Ybarra v. Illinois, 444 U.S. 85, 87, 96, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979) (striking down statute allowing officers to detain or search any persons in premises subject to a search warrant, holding such searches must be based on individual circumstances); Richards v. Wisconsin, 520 U.S. 385, 387-88, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997) (invalidating per se rule that no knock to announce police presence is permissible in drug warrant cases).
¶ 23 The record here shows that the DPS officer followed the department’s regular practice, in which he was trained, to request blood draws without a warrant whenever a *512 DUI suspect was flown out of state for treatment. As the dissent aptly puts it, DPS was acting on the belief that the dissipation of alcohol in the blood created a “per se exigency” that, before McNeely, ostensibly justified blood draws from DUI suspects. ¶ 57.
¶ 24 That belief was mistaken. Davis instructs that law enforcement acts in good faith if “binding appellate precedent specifically authorizes a particular police practice.” 564 U.S. at 241,131 S.Ct. 2419. But warrant-less blood draws from DUI suspects based on a “per se exigency” rather than the totality of individual circumstances have been discredited for over fifty years. In Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the United States Supreme Court upheld admission of a blood test taken from a defendant whom police had probable cause to believe had committed a DUI offense. The Court observed, “Search warrants are ordinarily required for searches of dwellings, and absent an emergency, no less could be required where intrusions into the human body are concerned.” Id. at 770, 86 S.Ct. 1826 (emphasis added).
¶ 25 The dissent suggests that the emergency in Schmerber was based on the natural dissipation of alcohol in the blood—that is, a per se exigency—rather than individualized circumstances making a warrant untenable, ¶ 53. It was not. The Court concluded that the emergency justifying the warrantless, nonconsensual blood draw was based on the “special facts” of the case, “where time had to be taken to bring the accused to the hospital and to investigate the scene of the accident,” thus “there was no time to seek out a magistrate and secure a warrant.” Id. at 770-71, 86 S.Ct. 1826.
¶ 26 It is true that alcohol dissipation starts a fast time clock, but under Schmer-ber, additional facts are necessary to show it was not feasible to obtain a warrant during that time frame. As McNeely observes, in the decades since Schmerber, technology has made it possible to quickly obtain warrants by phone or otherwise. 133 S.Ct. at 1561-63. The State does not allege any such “special facts” justifying a warrantless blood draw. Indeed, the State concedes that no exigency existed apart from the ordinary dissipation of alcohol in the blood, and the DPS officer testified that telephonic warrants are possible but he was trained to not obtain a warrant when a DUI suspect is airlifted out of state.
¶ 27 The Court in McNeely emphasized that it did not announce a new constitutional rule but rather reaffirmed Schmerber ⅛ emergency requirement. “[I]n Schmerber, we considered all of the facts and circumstances of the particular case and carefully based our holding on those specific facts.” McNeely, 133 S.Ct. at 1560; see also id. at 1559 (“Our decision in Schmerber applied this totality of the circumstances approach”); id. at 1561 (courts should “decide each case on its facts, as we did in Schmerber*’). A per se rule that warrants are never required is at considerable odds with the Schmerber rule that warrants are required absent special facts. Hence, the routine practice of directing blood draws in a particular context, where no exigent circumstances existed, was impermissible at the time Havatone was arrested.
¶ 28 The State argues that the good-faith exception applies because § 28-1321(C) had not been declared unconstitutional when Ha-vatone’s blood was taken. Cf. Illinois v. Krull, 480 U.S. 340, 355, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987) (“Nor can a law enforcement officer be said to have acted in good-faith reliance upon a statute if its provisions are such that a reasonable officer should have known that the statute was unconstitutional.”). Nor do we declare it unconstitutional here in all respects, See ¶ 18. But Schmerber's special facts rule was known, thereby rendering legally untenable the routine practice of warrantless blood draws from unconscious DUI suspects transported to other states for medical purposes. And no binding precedents specifically authorized such a practice. Arizona case law regarding a per se exigency was, at most, unsettled.
¶ 29 When the law is unsettled, “exclusion of the evidence obtained” in a ques *513 tionable search or seizure “may deter Fourth Amendment violations.” Davis, 564 U.S. at 250, 131 S.Ct. 2419 (Sotomayor, J., concurring in the judgment); accord United States v. Lara, 815 F.3d 605, 613 (9th Cir. 2016) (“We decline to expand the rule of Davis to cases in which the appellate precedent, rather than being binding, is (at best) unclear.”). As the Court observed in United States v. Johnson, if the exclusionary rule is not applied in “close” cases, “law enforcement officials would have little incentive to err on the side of constitutional behavior. Official awareness of the dubious constitutionality of a practice would be counterbalanced by official certainty that, so long as the Fourth Amendment law in the area remained unsettled, evidence obtained through the questionable practice” would not be excluded. 457 U.S. 537, 561, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982); accord Mitchell, 234 Ariz. at 419 ¶ 31, 323 P.3d at 78. Similarly, Justice O’Connor warned in Krull that “the failure to apply the exclusionary rule in the very case in which a state statute is held to have violated the Fourth Amendment destroys all incentive on the part of individual criminal defendants to litigate the violation of their Fourth Amendment rights.” 480 U.S. at 369, 107 S.Ct. 1160 (O’Connor, J., dissenting).
¶ 30 Arizona case law in effect at the time of Havatone’s blood test did not “specifically authorizeE ] a particular police practice,” see Davis, 564 U.S. at 241, 131 S.Ct. 2419 (emphasis omitted), of directing warrantless, nonconsensual blood draws from unconscious DUI suspects absent exigent circumstances. In State v. Cocio, 147 Ariz. 277, 709 P.2d 1336 (1985), we held that a formal arrest was not necessary for police to obtain a blood sample from a DUI suspect drawn by medical personnel for treatment purposes. We applied Schmerber as recognizing exigent circumstances based on dissipation of alcohol in the blood. Id. at 285-86, 709 P.2d at 1344-45. Construing former A.R.S. § 28-692(M) (renumbered 28-1888(E)), which allowed police to obtain medical blood samples, together with applicable United States Supreme Court precedents, we held that no warrant is necessary when (1) probable cause exists to believe the suspect has violated DUI laws, (2) “exigent circumstances are present,” and (3) “the blood is drawn for medical purposes by medical personnel.” Id. at 286, 709 P.2d at 1345. We recently rejected any suggestion that Codo established that alcohol in the bloodstream constitutes a per se exigency. See State v. Nissley, 241 Ariz. 327, 330 ¶ 11, 387 P.3d 1256, 1259 (2017) (holding the dissipation of alcohol in the blood does not create a per se exigency, but otherwise leaving the Codo decision intact).[2] But even before this clarification, Codo was distinguishable because it did not involve a government-directed blood draw, but was limited to the medical draw exception, where the state obtains a portion of blood already drawn for medical reasons. See Cocio, 147 Ariz. at 286-87, 709 P.2d at 1345-46 (“[T]he intrusion by the police was minimal. The blood extraction was not performed at the request of the police, but pursuant to the orders of the attending physician for medical purposes. Thus, the intrusion by the police in this case was not the needle puncture and the insertion of the needle into the vein, but merely a sampling off of an additional portion of the defendant’s blood.”). Whatever police conduct Codo “specifically authorized,” as the Court there made clear, was limited to the less-invasive state action at issue in that case.
¶31 In State v. Huffman, 137 Ariz. 300, 302, 670 P.2d 405, 407 (App. 1983), the court of appeals held that no arrest is necessary for a blood draw under the unconscious exception. The court applied Schmerber, holding that a warrantless, nonconsensual blood draw from an unconscious DUI suspect requires probable cause “and that the officer *514 might reasonably believe that he is confronted with an emergency so that the delay necessary to obtain a warrant, under the circumstances, threatens destruction of the evidence,” Id. at 302-03, 670 P.2d at 407-08. Far from specifically authorizing a per se rule, Huffman properly interpreted Schmer-ber to require an individualized, totality of the circumstances determination.
¶ 32 In State v. Flannigan, 194 Ariz. 150, 152 ¶ 9, 978 P.2d 127, 129 (App. 1998), police officers directed a blood draw from a DUI suspect relying on “the department’s policy that exigent circumstances always exist in vehicular aggravated assault and manslaughter cases.” Although the case involved a different statute, the court of appeals analyzed Schmerber’s exigent circumstances rule as we do here:
In Schmerber, exigent circumstances existed because of the evanescent quality of alcohol and because the police reasonably believed that they did not have time to “seek out a magistrate and secure a warrant” before evidence of the defendant’s intoxication would be destroyed. Schmer-ber does not provide a blanket exception to the warrant requirement whenever a suspect is believed to be under the influence of alcohol or drugs. Rather, the evanescent quality of alcohol and drugs in a person’s body creates an exigency only if the evidence might disappear before the police can obtain a warrant.
Id. at 154 ¶ 20, 978 P.2d at 131. The court aptly concluded, “The officers’ rote application of the department’s untenable policy ... violated Flannigan’s light to be free from unreasonable search and seizure.” Id. at 155 ¶ 25, 978 P.2d at 132.
¶ 33 Here, the officer’s “rote application” of department policy to obtain warrantless, nonconsensual blood draws from DUI suspects who are transported to another state for medical treatment was inconsistent with federal and state appellate precedents, and certainly was not “specifically authorized.”
¶ 34 For those reasons, DPS’s practice of directing routine, warrantless, nonconsensual blood draws from DUI suspects sent outside the state for medical treatment was not objectively reasonable under Arizona law at the time of the draw. Therefore, the trial and appeals courts erred as a matter of Arizona law in concluding that the State satisfied its burden of proving that the impermissible blood draw was justified by the good-faith exception to the exclusionary rule.
¶ 35 The dissent asserts that our decision “risks ‘set[ting] the criminal loose in the community without punishment.’ ” ¶ 63. As in any case in which law enforcement tactics are measured against constitutional protections, this may be the unavoidable result in some DUI cases. But other evidence of impaired driving likely exists in such cases that support continued prosecution for DUI. Here, evidence of probable cause, and hence evidence potentially supporting a guilty verdict, was abundant (defendant was the driver, witnesses saw the car driving erratically, the officer smelled alcohol, and there were beer cans and a liquor bottle at the accident scene). Moreover, A.R.S. § 28-1321(B) provides for suspension of a driver’s license where a person arrested for DUI fails to submit to alcohol testing. See Carrillo v. Houser, 224 Ariz. 463, 465-66 ¶ 13, 232 P.3d 1245, 1247-48 (2010); see also McNeely, 133 S.Ct. at 1565-67 (plurality) (noting such sanctions and concluding that “the government’s interest in this area does not justify departing from the warrant requirement without showing exigent circumstances that make securing a warrant impractical in a particular case”).
IV.
¶ 36 The parties disagree whether Nevada or Arizona law applies to this case.[3] The trial and appeals courts did not resolve the issue because they concluded the good-faith exception would apply in either state. The parties *515 did not extensively address the issue in this Court. Henee, we remand the case to the trial court to determine, in the first instance, whether Arizona or Nevada law applies. If the court concludes that Nevada law applies, it should determine whether the good-faith exception applies. If the good-faith exception does not apply, the trial court must vacate the convictions and sentences, suppress the blood-draw evidence, and order a new trial.
¶37 Accordingly, we vacate the court of appeals’ decision, reverse the trial court’s decision on the motion to suppress, and remand to that court for further proceedings consistent with this opinion.

. Article 2, section 8 of the Arizona Constitution also provides, “No person shall be disturbed in his private affairs, or his home invaded, without authority of law.” Havatone did not invoke his rights under this provision.

. The dissent also cites Campbell v. Superior Ct., 106 Ariz. 542, 554, 479 P.2d 685, 696 (1971), for the proposition that this Court found "no merit” to a constitutional challenge to the implied consent law. The Campbell Court’s analysis is two sentences, and appears to comprise a facial challenge to the whole statute, which we agree is not facially unconstitutional. Certainly it does not remotely amount to the specific appellate court authorization required to find good faith under Davis.

. Nevada's implied consent law includes an unconscious clause directing a mandatory blood draw, providing that where a DUI suspect “is dead or unconscious, the officer shall direct that samples of blood from the person [] be tested.” Nev. Rev. Stat. § 484C. 160(3). The Nevada Su *515 preme Court recently held unconstitutional a different section of the implied consent law because it did not allow a DUI suspect to withdraw consent. Byars v. State, 336 P.3d 939, 946 (Nev. 2014).