Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/22/2017 08:11 PM CST

State of Nebraska, appellee, v.
Jared S. Hoerle, appellant.

___ N.W.2d ___

Filed September 22, 2017.    No. S-16-1003.

1.  **Criminal Law: Motions for New Trial: Appeal and Error.** In a criminal case, a motion for new trial is addressed to the discretion of the trial court, and unless an abuse of discretion is shown, the trial court's determination will not be disturbed.
2.  **Search and Seizure.** Application of the good faith exception to the exclusionary rule is a question of law.
3.  **Judgments: Appeal and Error.** On a question of law, an appellate court reaches a conclusion independent of the court below.
4.  **Drunk Driving: Blood, Breath, and Urine Tests.** A court must consider the totality of the circumstances to determine whether a driver's consent to a blood test was freely and voluntarily given.
5.  **Constitutional Law: Search and Seizure: Evidence.** The Fourth Amendment does not expressly preclude the use of evidence obtained in violation of its commands.
6.  ____: ____: ____. The exclusionary rule operates as a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.
7.  ____: ____: ____. A Fourth Amendment violation does not necessarily mean that the exclusionary rule applies.
8.  **Courts: Search and Seizure.** Because the exclusionary rule should not be applied to objectively reasonable law enforcement activity, the U.S. Supreme Court created a good faith exception to the rule.
9.  **Constitutional Law: Courts: Search and Seizure: Police Officers and Sheriffs: Evidence.** A court may decline to apply the exclusionary rule when evidence is obtained pursuant to an officer's objective and reasonable reliance on a law that is not clearly unconstitutional at the time.

Appeal from the District Court for Lancaster County: Jodi Nelson, Judge. Affirmed.

Mark E. Rappl for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Cassel, J.

## INTRODUCTION

One day after Jared S. Hoerle's conviction for driving under the influence (DUI), the U.S. Supreme Court held that a blood test may not be administered without a warrant as a search incident to an arrest for DUI.[1] Hoerle moved for a new trial, arguing that it was error to admit the result of a warrantless test of his blood. The district court overruled the motion, and Hoerle appeals. Because we determine that the good faith exception to the exclusionary rule applies, we affirm the court's denial of a new trial.

## BACKGROUND

A motorist called the 911 emergency dispatch service after witnessing Hoerle wreck his motorcycle. An officer responding to the scene observed clues that Hoerle may be impaired by alcohol, and Hoerle admitted consuming alcoholic beverages. Based on the result of a preliminary breath test, the officer determined that he needed Hoerle to submit to a chemical test. A phlebotomist at a hospital obtained blood from Hoerle at the officer's request.

The State charged Hoerle with "DUI- .15+ (2 prior convictions)." At trial, the parties stipulated that the blood test

---

[1] See *Birchfield v. North Dakota*, ___ U.S. ___, 136 S. Ct. 2160, 195 L. Ed. 2d 560 (2016).

showed a blood alcohol concentration of .195 gram of alcohol per 100 milliliters of blood. A jury returned a verdict finding Hoerle guilty of DUI and found that the State proved Hoerle had a concentration of .150 of 1 gram or more by weight of alcohol per 100 milliliters of blood. The district court proceeded with an enhancement hearing and found Hoerle guilty of DUI over .15 with two prior convictions.

The following day, the U.S. Supreme Court released its decision in *Birchfield v. North Dakota*.[2] In that case, the Court considered "whether motorists lawfully arrested for drunk driving may be convicted of a crime or otherwise penalized for refusing to take a warrantless test measuring the alcohol in their bloodstream."[3] The Court held that the Fourth Amendment permits a warrantless breath test as a search incident to a lawful arrest for drunk driving, but does not allow a warrantless blood test as a search incident to arrest. The Court also touched on whether a blood test is permissible based on a driver's statutory implied consent and stated that "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense."[4]

Hoerle timely moved for a new trial. He detailed that the officer (1) acquired his blood sample without a warrant, (2) stated Hoerle was required to submit to a chemical blood test, and (3) told Hoerle refusal to submit to such test was a separate crime for which Hoerle may be charged. Hoerle claimed that in light of the new rule of constitutional law announced in *Birchfield*, the introduction of evidence regarding his blood alcohol constituted an error of law and the guilty verdict was not sustained by sufficient admissible evidence.

The district court held a hearing on the motion for new trial at which the arresting officer testified. The officer testified

---

[2] *Id.*

[3] *Id.*, 136 S. Ct. at 2172.

[4] *Id.*, 136 S. Ct. at 2186.

that he was denied permission to use the breath-testing facility at the jail due to concerns as to whether Hoerle was "fit for confinement" as a result of the accident. The officer then transported Hoerle to a hospital so that Hoerle's medical condition could be checked. Because the officer was already at the hospital and in order to preserve as much evidence as possible, he decided "to get everything done at the hospital, one shot." The officer read Hoerle the postarrest chemical test advisement form which advised that "refusal to submit to [the chemical test] is a separate crime for which you may be charged." The officer testified that Hoerle cooperated with his request for a blood sample and did not resist in any way. The officer did not attempt to obtain a warrant for the blood draw, because his knowledge at that time was that a warrant was not needed. The court overruled the motion.

After the district court imposed a sentence, Hoerle filed this appeal. We granted the State's petition to bypass review by the Nebraska Court of Appeals.

## ASSIGNMENT OF ERROR

Hoerle assigns that the district court abused its discretion by denying his motion for new trial.

## STANDARD OF REVIEW

[1-3] In a criminal case, a motion for new trial is addressed to the discretion of the trial court, and unless an abuse of discretion is shown, the trial court's determination will not be disturbed.[5] Application of the good faith exception to the exclusionary rule is a question of law.[6] On a question of law, an appellate court reaches a conclusion independent of the court below.[7]

---

[5] *State v. Olbricht*, 294 Neb. 974, 885 N.W.2d 699 (2016).

[6] *State v. Hill*, 288 Neb. 767, 851 N.W.2d 670 (2014).

[7] *State v. Muhannad*, 290 Neb. 59, 858 N.W.2d 598 (2015).

## ANALYSIS

### *BIRCHFIELD V. NORTH DAKOTA*

We begin with a brief review of *Birchfield*. The opinion addressed the consolidated cases of three individuals: one who refused a blood test, another who refused a breath test, and a third who submitted to a blood test after being told that the law required submission. Because Hoerle similarly submitted to a blood test after being read the postarrest chemical test advisement, we focus on the third individual's case.

Steven Michael Beylund agreed to have his blood drawn after he was informed that under North Dakota's implied consent advisory, refusing the blood test would itself be a crime punishable in the same manner as DUI and may result in a revocation of driving privileges for a minimum of 180 days and up to 3 years. Beylund's driver's license was thereafter suspended for 2 years after an administrative hearing, and he appealed from that decision. Although Beylund's case concerned an administrative license proceeding rather than a criminal proceeding, the *Birchfield* Court stated that "if such warrantless searches are constitutional, there is no obstacle under federal law to the admission of the results that they yield in either a criminal prosecution or a civil or administrative proceeding."[8]

The *Birchfield* Court then turned to the issue of consent. The Court stated that "[i]t is well established that a search is reasonable when the subject consents . . . and that sometimes consent to a search need not be express but may be fairly inferred from context . . . ."[9] But Beylund argued that his consent was coerced by the officer's warning that refusing the blood test would itself be a crime. The Court distinguished implied-consent laws that impose civil penalties from those imposing criminal penalties:

---

[8] *Birchfield v. North Dakota, supra* note 1, 136 S. Ct. at 2173.

[9] *Id.*, 136 S. Ct. at 2185.

Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply. . . . [N]othing we say here should be read to cast doubt on [those laws].

It is another matter, however, for a State not only to insist upon an intrusive blood test, but also to impose criminal penalties on the refusal to submit to such a test. There must be a limit to the consequences to which motorists may be deemed to have consented by virtue of a decision to drive on public roads.[10]

The Court stated that in applying the reasonableness standard, "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense."[11]

But the Court ultimately did not resolve the consent issue as a matter of law. Instead, the *Birchfield* Court remanded Beylund's cause to the state court to reevaluate Beylund's consent given the officer's partial inaccurate advisory that the State could permissibly compel both blood and breath tests. In doing so, the Court noted that "voluntariness of consent to a search must be 'determined from the totality of all the circumstances.'"[12]

*Birchfield* called into question the voluntariness of a motorist's consent to a blood test when the motorist is advised that refusal will result in a criminal charge. But it is unclear whether *Birchfield* created a categorical rule that consent given after threat of criminal prosecution is per se involuntary. The Court's remand suggests that it did not.

Following *Birchfield*, state appellate courts have taken different paths. One court determined that a warrantless blood draw could not be upheld based on consent after the driver was informed that failure to submit constituted a separate

---

[10] *Id.*

[11] *Id.*, 136 S. Ct. at 2186.

[12] *Id.*

crime.[13] Another court followed the lead of *Birchfield* and remanded the cause to the trial court for a reevaluation of consent.[14] Other courts have considered the totality of the circumstances to determine whether the driver's consent was freely and voluntarily given.[15]

[4] We conclude that *Birchfield* does not make categorically invalid a warrantless blood draw based on actual consent when a driver is incorrectly advised that the driver is required to submit to such a test or will face criminal penalties for a refusal. Rather, a court must consider the totality of the circumstances to determine whether a driver's consent to a blood test was freely and voluntarily given.

In the case before us, the timing dictated an unusual procedure. Because the *Birchfield* decision came after completion of the trial, there was no opportunity for a motion to suppress. Instead, the consent issue was presented through a motion for new trial. The district court made no express factual findings. No one asserts error to the lack of such findings.

Although we could discern implicit factual findings regarding consent, before doing so another course deserves our attention. If the good faith exception to the exclusionary rule applies to pre-*Birchfield* blood draws, we can resolve the appeal on that basis.

## Exclusionary Rule and Good Faith Exception

[5-7] The Fourth Amendment does not expressly preclude the use of evidence obtained in violation of its commands.[16]

---

[13] See *State v. Schmidt*, 53 Kan. App. 2d 225, 385 P.3d 936 (2016).

[14] See *Commonwealth v. Evans*, 153 A.3d 323 (Pa. Super. 2016).

[15] See, *People v. Mason*, 8 Cal. App. 5th Supp. 11, 214 Cal. Rptr. 3d 685 (2016); *State v. Charlson*, 160 Idaho 610, 377 P.3d 1073 (2016); *State v. Blackman*, ___ Wis. 2d ___, 898 N.W.2d 774 (2017).

[16] See, *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984); *State v. Henderson*, 289 Neb. 271, 854 N.W.2d 616 (2014).

The exclusionary rule "operates as 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.'"[17] Thus, a Fourth Amendment violation does not necessarily mean that the exclusionary rule applies.[18]

[8] Because the exclusionary rule should not be applied to objectively reasonable law enforcement activity, the U.S. Supreme Court created a good faith exception to the rule.[19] We have followed suit and applied the good faith exception in a number of cases.[20]

*Birchfield* did not directly address whether the good faith exception to the exclusionary rule should apply in a situation where consent to a blood test is given following an incorrect advisement that refusal could be criminally punished. But the State draws guidance from the following footnote:

> If the court on remand finds that Beylund did not voluntarily consent, it will have to address whether the evidence obtained in the search must be suppressed when the search was carried out pursuant to a state statute, see *Heien v. North Carolina*, . . . 135 S.Ct. 530, 537-539, 190 L.Ed.2d 475 (2014), and the evidence is offered in an administrative rather than criminal proceeding, see *Pennsylvania Bd. of Probation and Parole v. Scott*, 524 U.S. 357, 363-364, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998). And as Beylund notes, remedies may be available to him under state law.[21]

---

[17] *United States v. Leon, supra* note 16, 468 U.S. at 906.

[18] See *State v. Tyler*, 291 Neb. 920, 870 N.W.2d 119 (2015).

[19] See *United States v. Leon, supra* note 16.

[20] See, e.g., *State v. Tyler, supra* note 18; *State v. Henderson, supra* note 16; *State v. Hill, supra* note 6; *State v. Bromm*, 285 Neb. 193, 826 N.W.2d 270 (2013); *State v. Nuss*, 279 Neb. 648, 781 N.W.2d 60 (2010).

[21] *Birchfield v. North Dakota, supra* note 1, 136 S. Ct. at 2186 n.9.

The State's argument focuses on the first case cited in the footnote. In *Heien v. North Carolina*,[22] the Court held that an officer's mistake of the law was reasonable and that thus, there was reasonable suspicion justifying the stop under the Fourth Amendment. Because there was no Fourth Amendment violation, the *Heien* Court did not need to consider the appropriate remedy.

The other case cited in the footnote involved application of the exclusionary rule. In *Pennsylvania Bd. of Probation and Parole v. Scott*,[23] the Court recognized that it had "repeatedly declined to extend the exclusionary rule to proceedings other than criminal trials." Ultimately, the Court held that "parole boards are not required by federal law to exclude evidence obtained in violation of the Fourth Amendment."[24]

Although neither of the majority opinions mentioned the good faith exception, the *Birchfield* Court's juxtaposition of the two cases is significant. One case held that a stop was lawful because the officer's mistake as to the law was reasonable. The other case, in discussing whether the exclusionary rule should apply in a noncriminal proceeding, emphasized that use of the rule is unwarranted where its deterrence benefits would not outweigh its social costs. Together, these cases do not foreclose application of the good faith exception where the Fourth Amendment violation was due to an officer's reasonable mistake of law.

[9] A court may decline to apply the exclusionary rule when evidence is obtained pursuant to an officer's objective and reasonable reliance on a law that is not clearly unconstitutional at the time. The U.S. Supreme Court declared

---

[22] *Heien v. North Carolina*, ___ U.S. ___, 135 S. Ct. 530, 190 L. Ed. 2d 475 (2014).

[23] *Pennsylvania Bd. of Probation and Parole v. Scott*, 524 U.S. 357, 363, 118 S. Ct. 2014, 141 L. Ed. 2d 344 (1998).

[24] *Id.*, 524 U.S. at 369.

that the exclusionary rule did not apply to evidence obtained by police who acted in objectively reasonable reliance on a statute authorizing warrantless administrative searches, but which was subsequently found to violate the Fourth Amendment.[25]

The Court explained the underlying rationale:

The application of the exclusionary rule to suppress evidence obtained by an officer acting in objectively reasonable reliance on a statute would have as little deterrent effect on the officer's actions as would the exclusion of evidence when an officer acts in objectively reasonable reliance on a warrant. Unless a statute is clearly unconstitutional, an officer cannot be expected to question the judgment of the legislature that passed the law. If the statute is subsequently declared unconstitutional, excluding evidence obtained pursuant to it prior to such a judicial declaration will not deter further Fourth Amendment violations by an officer who has simply fulfilled his responsibility to enforce the statute as written.[26]

Applying this rationale, we discern no deterrent value in suppressing the results of Hoerle's blood test. The officer advised Hoerle that refusal to submit to a chemical test was a separate crime for which he may be charged, an advisement required by the statute.[27] And the statute was not clearly unconstitutional at the time of Hoerle's arrest in April 2015.

Following *Birchfield*, state courts are not uniform as to whether the good faith exception to the exclusionary rule should apply. At least two states have adopted the good faith

---

[25] See *Illinois v. Krull*, 480 U.S. 340, 107 S. Ct. 1160, 94 L. Ed. 2d 364 (1987).

[26] *Id.*, 480 U.S. at 349-50.

[27] See Neb. Rev. Stat. § 60-6,197(5) (Cum. Supp. 2016).

exception.[28] And at least two states have determined that the exception did not apply.[29]

We are not persuaded by the reasoning of the courts declining to apply the exception. Each advanced a different rationale, which we discuss separately.

The Arizona Supreme Court reasoned that an officer should have known that a departmental practice of directing blood draws from DUI suspects, without making a case-specific determination whether a warrant could be timely secured, was either impermissible or at least constitutionally suspect.[30] But it seems to us that law enforcement officers are generally tasked with enforcing the law as written, and it would be unwise to expect them to make their own judgment calls as to the constitutionality of such statutes. The U.S. Supreme Court cogently stated:

> Police are charged to enforce laws until and unless they are declared unconstitutional. The enactment of a law forecloses speculation by enforcement officers concerning its constitutionality—with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws. Society would be ill-served if its police officers took it upon themselves to determine which laws are and which are not constitutionally entitled to enforcement.[31]

The Wisconsin Supreme Court feared that if it did not suppress the evidence, officers would continue to read the incorrect advisory form to others in order to provide the basis for

---

[28] See, *State v. Schmidt, supra* note 13; *State v. Reynolds*, 504 S.W.3d 283 (Tenn. 2016).

[29] See, *State v. Havatone*, 241 Ariz. 506, 389 P.3d 1251 (2017); *State v. Blackman, supra* note 15.

[30] See *State v. Havatone, supra* note 29.

[31] *Michigan v. DeFillippo*, 443 U.S. 31, 38, 99 S. Ct. 2627, 61 L. Ed. 2d 343 (1979).

voluntary consent.[32] But as the dissent pointed out, an officer who did so after release of the majority opinion would be unable to rely on the good faith exception.[33] To us, the Wisconsin dissent seems more persuasive.

Because the officer here acted in objectively reasonable reliance on a statute that had not been found unconstitutional at the time, excluding the results of Hoerle's blood test would not serve the purpose of the exclusionary rule. We conclude that the good faith exception applies to warrantless pre-*Birchfield* blood draws.

## CONCLUSION

Because we conclude that the good faith exception applies to warrantless blood draws conducted prior to the U.S. Supreme Court's decision in *Birchfield*, we find no abuse of discretion by the district court in overruling Hoerle's motion for new trial.

AFFIRMED.

---

[32] See *State v. Blackman, supra* note 15.

[33] See *id.* (Roggensack, C.J., dissenting).