# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 45569

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | Boise, February 2019 Term |
| | ) | |
| v. | ) | Opinion filed: February 7, 2020 |
| | ) | |
| DAVID ALLEN POOL, | ) | Karel A. Lehrman, Clerk |
| | ) | |
| Defendant-Respondent. | ) | **AMENDED OPINION** |
| | ) | **THE COURT'S PRIOR** |
| | ) | **OPINION DATED FEBRUARY** |
| | ) | **7, 2020 IS HEREBY AMENDED.** |
| | ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Deborah A. Bail, District Judge.

The district court's decision granting the motion to suppress the results of the blood draw is <u>reversed.</u>

Lawrence G. Wasden, Idaho Attorney General, Boise, for Appellant. Kenneth K. Jorgensen argued.

Eric Don Fredericksen, State Appellate Public Defender, Boise, for Respondent. Justin Curtis argued.

_____

MOELLER, Justice.

The State appeals from a district court decision granting David Allen Pool's motion to suppress the results of a warrantless blood draw on the grounds that it was an unreasonable search under the Fourth Amendment to the U.S. Constitution. The State maintains that pursuant to Idaho's implied consent law, I.C. § 18-8002(1), the search was reasonable and the district court erred in requiring proof of exigency. For the reasons stated below, we reverse.[1]

---

[1] This opinion was suspended for several months, pursuant to a stipulation of counsel, in light of the U.S. Supreme Court's pending decision in *Mitchell v. Wisconsin*, 139 S.Ct. 2525 (2019), a case wherein certiorari was granted on the issue of implied consent. Unfortunately, a plurality of the Supreme Court decided the case on different grounds, holding:

# I.    FACTUAL AND PROCEDURAL BACKGROUND

On Tuesday, January 12, 2016, at around 5:45 P.M., Officer Casey Hancuff came upon the scene of an automobile accident involving two vehicles, one of which was driven by Pool. Pool had failed to negotiate a turn and his vehicle was hit by oncoming traffic. He was not wearing a seatbelt and his airbag deployed in the crash. As a result, he sustained a head injury and was unconscious when the officer arrived at the scene. Pool's son, a passenger in the vehicle, informed the officer that Pool had not been staying in his traffic lane prior to the crash. He also asserted that the doctors who had prescribed medication to Pool never told him that he could not drive while taking his medications.

When Pool regained consciousness, the officer questioned him and noted that he appeared "very lethargic" and "had a presentation similar to a drunk driver . . . slurred speech and thick tongue and obviously disoriented." Pool told the officer that he believed he had taken his prescription medications that day. Shortly thereafter, a large "baggy" containing seven bottles of prescription medication was recovered from Pool's vehicle. The officer recognized several of the medications and suspected that they had caused Pool to be impaired. Around that time, Pool and his son were taken to the hospital. The officer followed to question Pool further.

At the hospital, the officer ruled out alcohol as a cause of Pool's impairment based upon the results of a horizontal gaze nystagmus test. The officer did not conduct other field sobriety tests, as he believed Pool's medical condition rendered it improper for him to do so. Instead, he obtained a blood sample to be used for evidentiary testing.

This appeal revolves around the officer's justification for obtaining the blood sample without a warrant. The facts surrounding the blood draw are as follows: While a phlebotomist was taking blood samples from Pool for medical purposes, he recognized the officer's evidentiary kit and asked if he should also take a blood sample for the officer at that time. The

---

When police have probable cause to believe a person has committed a drunk-driving offense and the driver's unconsciousness or stupor requires him to be taken to the hospital or similar facility before police have a reasonable opportunity to administer a standard evidentiary breath test, they may almost always order a warrantless blood test to measure the driver's BAC without offending the Fourth Amendment.

*Id.* at 2539; *see also id.* at 2551(Gorsuch, J., dissenting) ("We took this case to decide whether Wisconsin drivers impliedly consent to blood alcohol tests thanks to a state statute."). Although this holding is a helpful clarification of the exigency exception, it does not address the question presented on appeal in this case, where the State has rested its argument entirely on the basis of Idaho's implied consent law, rather than exigency. We note, however, that had *Mitchell* been decided prior to the district court's ruling on the motion to suppress, the proceedings below likely would have been briefed, argued, and ruled upon under a different standard.

officer replied, "Yes, of course." Pool did not resist the blood draw but also did not appear to understand what was happening, as evidenced by his question to the phlebotomist: "Is that an IV?" At that point, Pool was told that it was a blood draw, but he was not told that his blood would be used for evidentiary testing. The officer received two vials of Pool's blood from the phlebotomist.

Although the officer initially testified that Pool consented to the blood draw before it occurred, he later corrected that testimony and acknowledged that Pool did not actually consent to the blood draw at any time. He also acknowledged that Pool was not informed before the blood draw that his blood would be used for evidentiary testing. In addition, the officer stated that he did not make any effort to secure a warrant for the blood draw. Approximately ten minutes after the blood draw occurred, the officer read the administrative license suspension (ALS) advisory form to Pool. The officer testified that the normal procedure for taking a blood draw involves reading the advisory form and asking the driver for verbal consent prior to the blood draw. After the ALS form was read to him, Pool did not object to the blood draw.[2]

An analysis of Pool's blood sample examined by the State Crime Lab revealed that he was under the influence of multiple medications that would have impaired his ability to drive. Consequently, Pool was charged with felony Injury to Children, I.C. § 18-1501(3), felony Persons Under the Influence of Alcohol, Drugs or Any Other Intoxicating Substances (one prior felony conviction within fifteen years), I.C. §§ 18-8004, -8005(9), and misdemeanor Driving Without Privileges (second offense within five years), I.C. § 18-8001(4).

On August 21, 2017, Pool filed a motion to suppress the results of the State's blood draw, arguing that he did not consent to the blood draw, nor could he have done so due to his condition. As a result, he argued that the blood draw violated his right to be free from unreasonable searches and seizures. In response, the State argued that the implied consent law applied, and, therefore, the warrantless blood draw was not an unreasonable search. In ruling on the motion to suppress, the district court held that because (1) Pool had not given actual

---

[2] The ALS advisory notifies an individual that he is required by law to submit to evidentiary testing and enumerates the civil consequences (i.e., license suspension, civil penalty, installation of an ignition interlock device) of refusing or failing an evidentiary test. Pursuant to Idaho Code section 18-8002(3), officers are required to provide such notice prior to evidentiary testing. Failure to read the ALS form prior to evidentiary testing results in the inability of the State to enforce a license suspension. *See Halen v. State*, 136 Idaho 829, 834, 41 P.3d 257, 262 (2002) ("Motorists who refuse to submit to requested tests are entitled to have their licenses reinstated if they can establish at the refusal hearing that they were not completely advised . . . ."). However, since this advisory concerns only civil consequences, it is of no consequence to the Fourth Amendment analysis in this case.

consent, (2) there were no exigent circumstances involved, and (3) a warrant could have easily been obtained, a warrant was required to draw his blood for evidentiary purposes. Accordingly, the district court granted Pool's motion to suppress. The State timely appealed.

## II.     STANDARD OF REVIEW

"We review a district court's order granting a motion to suppress evidence using a bifurcated standard of review." *State v. Wulff*, 157 Idaho 416, 418, 337 P.3d 575, 577 (2014). This means that when a ruling on a suppression motion is challenged on appeal, "the Court accepts the trial court's findings of fact that are supported by substantial evidence, but freely reviews the application of constitutional principles to the facts as found." *State v. Page*, 140 Idaho 841, 843, 103 P.3d 454, 456 (2004).

## III.     ANALYSIS

The district court held that "[b]ased upon the totality of the circumstances in this case, when a warrant can be readily obtained and there is no exigency, a warrant must be obtained." The State argues that pursuant to Idaho's implied consent statute, Idaho Code section 18-8002(1), the district court erred in requiring exigency in order to invoke the consent exception. Pool concedes that the district court erred "by requiring evidence of an exigency," but argues that "the district court's ultimate conclusion—that the State must demonstrate either an exigency or actual consent—is correct," and urges this Court to "reconsider and overrule its prior decisions." Thus, this case squarely presents us with the issue of whether the State can rely wholly on implied consent as a basis for a warrantless blood draw when the defendant has not expressly revoked consent.

**A.     The district court erred in holding that exigent circumstances are required for a warrantless blood draw.**

The district court broadly held that the State must show exigency in order to conduct a warrantless blood draw. The State argues, and Pool has conceded, that the exigent circumstances exception to the warrant requirement is separate from the consent exception. We agree. Therefore, we conclude that by conflating the exigency exception and consent exceptions, and then applying a totality of the circumstances test, the district court erred. It still remains for us, however, to determine whether there are limits when consent can be implied under Idaho's implied consent law.

**B.     Idaho's implied consent laws remain valid in the aftermath of *McNeely*.**

4

The central thesis of Pool's argument on appeal is that statutorily implied consent alone is not sufficient to satisfy the consent exception to the Fourth Amendment's warrant requirement. Accordingly, he asks the Court to "reconsider its prior decisions that have held that statutorily implied consent remains valid until affirmatively withdrawn."

We have recognized that "[r]equiring [] a person submit to a blood alcohol test is a search and seizure under the Fourth Amendment to the United States Constitution . . . ." *Wulff*, 157 Idaho at 418, 337 P.3d at 577. "Warrantless searches and seizures are presumptively unreasonable under the Fourth Amendment. To overcome this presumption of unreasonableness, the search must fall within a well-recognized exception to the warrant requirement." *Id.* Consent is one such well-recognized exception. *Id.* Absent express consent, all fifty states, including Idaho, have adopted implied consent laws as a condition for exercising the privilege of driving upon the states' roads and highways. Idaho's implied consent law is set forth in Idaho Code section 18-8002(1) and provides:

> Any person who drives or is in actual physical control of a motor vehicle in this state shall be deemed to have given his consent to evidentiary testing for concentration of alcohol as defined in section 18-8004, Idaho Code, and to have given his consent to evidentiary testing for the presence of drugs or other intoxicating substances, provided that such testing is administered at the request of a peace officer having reasonable grounds to believe that person has been driving or was in actual physical control of a motor vehicle in violation of the provisions of section 18-8004 or 18-8006, Idaho Code.

The extent to which implied consent laws act as an exception to the Fourth Amendment warrant requirement has been litigated extensively since *Missouri v. McNeely*, where the U.S. Supreme Court held that dissipation of alcohol in the blood, alone, does not qualify as a per se exigency allowing for a warrantless blood draw, but that exigency must be judged on a case-by-case basis based on the totality of the circumstances. 569 U.S. 141 (2013). However, in dicta, the Supreme Court opined that implied consent statutes are one type of "*a broad range of legal tools to enforce [ ] drunk-driving laws and to secure BAC evidence without undertaking warrantless nonconsensual blood draws.*" *Id* (emphasis added).

We have previously rejected the notion of "irrevocable implied consent" because it acts as a "per se rule" that improperly disregards the voluntariness of that consent:

> Voluntariness has always been analyzed under the totality of the circumstances approach: "whether a consent to a search was in fact 'voluntary' . . . is a question of fact to be determined from the totality of all the circumstances." *Schneckloth v.*

5

*Bustamonte*, 412 U.S. 218, 227 (1973). Further, the State has the burden to prove that "consent was, in fact, freely and voluntarily given." *Id.* at 222 (quoting *Bumper v. N. Carolina*, 391 U.S. 543 (1968)). . . . When the Court has determined whether a suspect's consent was voluntary or coerced, its decisions "each reflected a careful scrutiny of all the surrounding circumstances" and "none of them turned on the presence or absence of a single controlling criterion." *Id.* at 226.

*Wulff*, 157 Idaho at 422, 337 P.3d at 581.[3] "Where the validity of a search rests on consent, the State has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given." *State v. Rios*, 160 Idaho 262, 265, 371 P.3d 316, 319 (2016) (quoting *Florida v. Royer*, 460 U.S. 491, 497 (1983)).

In the years since *McNeely*, this Court has repeatedly concluded that the implied consent law creates a valid exception to the warrant requirement. For instance, in *State v. Eversole*, Eversole argued that the U.S. Supreme Court's decision in *McNeely* clarified that consent cannot be statutorily implied. 160 Idaho 239, 242–43, 371 P.3d 293, 296–97 (2016). We rejected his argument, stating:

> *McNeely* did not specifically address the validity of implied consent statutes much less hold that implied consent statutes cannot serve as an exception to the warrant requirement.
>
> . . . .
>
> Instead, *McNeely* recognized that implied consent statutes are one type of "*a broad range of legal tools* to enforce [ ] drunk-driving laws and *to secure BAC evidence without undertaking warrantless nonconsensual blood draws.*" 569 U.S. at 160–61 (emphasis added). The Court stated, "[s]uch laws impose significant consequences when a motorist withdraws consent; typically the motorist's driver's license is immediately suspended or revoked, and most States allow the motorist's refusal to take a BAC test to be used as evidence against him in a subsequent criminal prosecution." *Id.* Thus, *McNeely* suggests that implied consent statutes are still a valid means of obtaining BAC evidence.

*Id.*

In *State v. Rios*, this Court affirmed *Eversole* and again concluded that implied consent is a valid exception to the warrant requirement. 160 Idaho 262, 266, 371 P.3d 316, 320 (2016). Pool's argument here is identical to Rios's argument in that case—*i.e.*, that "implied consent alone does not satisfy the consent exception to the warrant requirement." *Id.* In rejecting Rios's

---

[3] Prior to *McNeely*, this Court held that implied consent could not be withdrawn, and on that basis, we affirmed denials of suppression motions in these types of cases. *See State v. Diaz*, 144 Idaho 300, 160 P.3d 739 (2007); *State v. Woolery*, 116 Idaho 368, 775 P.2d 1210 (1989). However, in light of *McNeely*, we determined that consent must be revocable, and accordingly, we overruled those decisions in *Wulff*.

argument, we stated, "[a]s we concluded in *Eversole*, under *McNeely*, implied consent may satisfy the consent exception to the warrant requirement. . . . [A]ctual consent is not required." *Id.* at 266, 371 P.3d at 320.

In *State v. Charlson*, 160 Idaho 610, 377 P.3d 1073 (2016), we relied on *McNeely* to uphold Idaho's implied consent scheme. *Charlson* is the first post-*McNeely* case in which we affirmed a denial of a motion to suppress the results of a blood draw based on application of the implied consent statute. *See id.* In so doing, we recognized that the totality of the circumstances must be evaluated in determining whether consent to evidentiary testing was voluntary.

In *Charlson*, a driver was deemed to have given implied consent to a blood test pursuant to section 18-8002. *Id.* On appeal, he argued that the State failed to prove voluntary consent under the totality of the circumstances. *Id.* At the outset of the analysis, we recognized in light of *McNeely*, that, "[t]o be voluntary, consent based upon Idaho's implied consent statute must overcome two hurdles: '(1) drivers give their initial consent voluntarily[;] and (2) drivers must continue to give voluntary consent.' " *Id.* (quoting *Wulff*, 157 Idaho at 423, 337 P.3d at 582). We further acknowledged that, "[t]he State bears the burden of proving by a preponderance of the evidence that consent was voluntary. Whether consent was voluntary is determined by examining a totality of the circumstances." *Id.* (internal citation omitted). In addition, we noted that, although *McNeely* could be construed narrowly as applying only to exigency, "the better reading is 'that implied consent is no longer acceptable when it operates as a per se exception to the warrant requirement because the Court repeatedly expressed disapproval for categorical rules.' " *Id.* at 614, 377 P.3d at 1077 (quoting *Wulff*, 157 Idaho at 421, 337 P.3d at 580).

Regarding the first element of the implied consent test—that drivers must give their initial consent voluntarily—*Charlson* reiterated an assertion from *Wulff* that "[d]rivers in Idaho give their initial consent to evidentiary testing by driving on Idaho roads voluntarily." *Id.* at 616, 377 P.3d at 1079 (quoting *Wulff*, 157 Idaho at 423, 337 P.3d at 582). In essence, *Charlson* equates voluntary driving with voluntary consent to evidentiary testing. *Id.* Charlson argued that under the *Wulff* standard, the State needed to prove that he drove voluntarily. *Id.* However, this Court rejected this notion, asserting that, "it is not the State's burden to affirmatively prove that Charlson drove voluntarily." *Id.* at 617, 377 P.3d at 1080. Instead, it focused on the fact that there was "evidence that Charlson drove on an Idaho road. There is no evidence whatsoever that he did so involuntarily." *Id.* Accordingly, this Court concluded that, "[s]hould the facts of a

particular case give any indication that the defendant did not drive voluntarily, then courts should consider such an argument. Absent any such indication, this Court need not engage in the analysis." *Id.* In a footnote corresponding to the statement that the Court need not engage in the "involuntary" analysis, we explained that Idaho precedent relating to the implied consent law did not require the State to prove voluntary consent:

> This interpretation is consistent with this Court's precedent. In *Wulff*, *Halseth*, and *Arrotta*, the State did not prove that the defendants had initially consented voluntarily or that the defendant continued to do so. Rather, at some point, the defendants withdrew that consent. Had the rule operated as Charlson desires, this Court's analysis would have begun and ended with finding that the State had not proven that the driving was voluntary. *Instead, this Court allowed the State to rest on the presumption that one typically drives voluntarily, and examined whether revoking consent later could serve to sever the statutorily implied consent.*

*Id.* (emphasis added) (internal citations omitted). From this, it is evident that *Charlson* implemented a rebuttable presumption that any time a person drives on an Idaho road, he is *presumed* to have done so voluntarily.

The *Charlson* opinion went on to analyze the second element of the implied consent test, which requires that "drivers must continue to give voluntary consent." 160 Idaho at 617, 377 P.3d at 1080 (quoting *Wulff*, 157 Idaho at 423, 337 P.3d at 582). The Court asserted that:

> [T]he only way to affirmatively establish that consent is continuously given, as advocated for by Charlson, would be to have officers repeatedly ask defendants if they continue to consent. This Court and the United States Supreme Court have held that officers do not have to inform defendants of their right to refuse to consent. *State v. Christofferson*, 101 Idaho 156, 158, 610 P.2d 515, 517 (1980) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 229 (1973)). If officers are not required to inform a defendant of their right to refuse to consent, it logically follows that they do not have to affirmatively ask the defendant whether or not he or she does consent.

*Id*. The Court further stated that "[r]equiring the State to affirmatively prove continuous consent would thus run afoul of this Court's precedent. Indeed, in *Rios*, this Court stated that '[u]nder Idaho law, a driver's implied consent continues if it is not revoked before the time of evidentiary testing.' " *Id.* at 617–18, 377 P.3d at 1080–81 (quoting *Rios*, 160 Idaho at 164, 371 P.3d at 319–20). Accordingly, we determined that, "where no evidence is presented indicating that consent was not voluntary, the statutorily provided implied consent is valid and remains in place until affirmatively withdrawn." *Id.* at 618, 377 P.3d at 1081.

After addressing the elements of the implied consent test, we conducted a totality of the circumstances analysis, concluding:

> There is absolutely no evidence suggesting that the blood draw was non-consensual. Given the statutorily provided implied consent, the totality of the circumstances establishes by a preponderance of the evidence that the blood draw was consensual. *The circumstances are that a blood draw occurred, that Charlson had consented to one evidentiary test, and that Charlson did not revoke his consent before the blood draw.* The totality of the circumstances indicates that the blood draw was consensual and that the consent was voluntary.
>
> This logic is consistent with this Court's practice of examining whether the withdrawal of consent eliminates implied consent, rather than examining whether it is further evidence that the State has failed to meet its burden of establishing affirmative and continuous consent.

*Id.* (emphasis added). Thus, we see that although we have rejected a construction of Idaho's implied consent laws that renders a driver's implied consent irrevocable, we have clearly upheld the principle of implied revocable consent. Therefore, absent proof that a driver later withdrew his consent to testing, a trial court may, consistent with the concept of *implied* consent, *infer* from the totality of the circumstances that consent to evidentiary testing was voluntary under section 18-8002. *Id.*

Although Pool and the dissent have cited a concurrence and a dissent from the Idaho Court of Appeals to support their position that actual consent is required to satisfy the consent exception to the warrant requirement, those opinions were implicitly rejected by this Court's decisions in *Rios* and *Eversole*. *See State v. Smith*, 159 Idaho 15, 28, 355 P.3d 644, 657 (Ct. App. 2015) (Lansing, J., specially concurring); *Bobeck v. Idaho Transp. Dep't*, 159 Idaho 539, 546, 363 P.3d 861, 868 (Ct. App. 2015) (Gutierrez, J., dissenting). With the exception of one case from Arizona that does not appear to be on point because it concerns a clause not present in the comparable Idaho statute, *see State v. Havatone*, 389 P.3d 1251 (Ariz. 2017), Pool does not cite any subsequent case law from any jurisdiction to demonstrate that this Court's stance on the issue is incorrect. Consequently, we find his argument to be without merit.

**C.      Under the totality of the circumstances, as applied to Idaho's implied consent law, the record does not support a finding that Pool revoked his consent.**

This Court has repeatedly rejected the notion that actual consent is the *only* way to demonstrate consent for Fourth Amendment purposes, and we find no compelling reason to overturn our controlling precedent in that regard. While we continue to hold that implied consent does not create a per se exception to the warrant requirement, we acknowledge that it creates a

high bar for a defendant to overcome, requiring the finder of fact to conclude from the totality of the circumstances that the driver withdrew consent. In this case, the district court did not make a finding that Pool withdrew his consent, and nothing in the record would support such a finding.

Therefore, applying the same analysis to the case at bar as we did in *Charlson*, we must likewise conclude that the totality of the circumstances establish that Pool never revoked his consent to a blood draw for evidentiary purposes. The record shows conclusively that Pool was driving voluntarily at the time of the accident. Immediately preceding the blood draw in question, Pool had undergone a medical blood draw, with no apparent objection, which was performed by the hospital for diagnostic purposes. Seconds later, with little additional physical intrusion, Pool's apparent awareness that a medical procedure was taking place, and no objection to the medical procedure, a second blood draw was performed by the same phlebotomist. As this occurred, Pool gave no indication that he had withdrawn or was withdrawing his consent. Given the current state of the law, there is simply no requirement that the State establish anything more in order to comply with section 18-8002.

We acknowledge the concerns of the dissent. Nevertheless, we note that the first concern raised—justiciability due to the availability of an independent source of the same evidence— was not argued by Pool in his briefing nor addressed by the district court below. Although this concern is well taken, it is not our place to raise such issues sua sponte on appeal and grant relief accordingly. As to the second concern, the dissent adopts and expands on Pool's contention that aspects of Idaho's implied consent law are unconstitutional,[4] and would require that all drivers "first be advised" of (1) the consequences of refusing to submit to evidentiary testing and (2) that "by driving on Idaho roads [they are] consenting to a warrantless blood draw that could be used against [them] in a criminal proceeding." The dissent concludes that, "[b]efore a citizen can *impliedly consent* to having waived a fundamental constitutional right, the citizen must first be advised of the consequences." In essence, the dissent suggests we take the "implied" out of "implied consent."

Ignoring the practical concerns of such a ruling, this would require us to effectively rewrite Idaho's implied consent statute and replace it with an *actual consent* standard. Indeed, it is impossible to reconcile such an approach with the clearly stated policy of the Idaho legislature:

---

[4] While conceding that Idaho's implied consent statute is not unconstitutional in all respects, Pool argues that "Idaho's 'implied consent' statute cannot, on its own, establish consent for Fourth Amendment purposes."

> Any person who drives or is in actual physical control of a motor vehicle in this state *shall be deemed to have given his consent* to evidentiary testing for concentration of alcohol as defined in section 18-8004, Idaho Code, and to have given his consent to evidentiary testing for the presence of drugs or other intoxicating substances . . . .

I.C. § 18-8002(1) (emphasis added). As this Court has consistently held to be axiomatic, "ignorance of the law is not a defense." *State v. Fox*, 124 Idaho 924, 926, 866 P.2d 181, 183 (1993). The Idaho Court of Appeals has previously applied this principle to DUIs and the consequences of sentencing enhancements. *See Wilson v. State*, 133 Idaho 874, 880, 993 P.2d 1205, 1211 (Ct. App. 2000) ("[I]t is axiomatic that citizens are presumptively charged with knowledge of the law once such laws are passed."). Additionally, the U.S. Supreme Court has noted that "[t]he entire structure of our democratic government rests on the premise that the individual citizen is capable of informing himself about the particular policies that affect his destiny." *Atkins v. Parker*, 472 U.S. 115, 131 (1985).

In sum, while we understand Pool's Fourth Amendment concerns, to hold in his favor would require us to ignore well-established state law and overturn years of post-*McNeeley* jurisprudence in order to reach a different result. Principles of *stare decisis* compel us against taking such a course. Accordingly, we hold that absent evidence that a defendant has affirmatively withdrawn his or her consent, implied consent for warrantless blood draws remains a valid exception to the Fourth Amendment warrant requirement, unless or until the legislature changes Idaho's implied consent laws or the U.S. Supreme Court provides further guidance.

## IV.    CONCLUSION

For the reasons set forth above, we reverse the district court's decision granting Pool's motion to suppress the results of the blood draw, and remand this matter for further proceedings consistent with this opinion.

Chief Justice BURDICK, and Justices BRODY and BEVAN **CONCUR.**

STEGNER, J., dissenting.

This is a troubling case for several reasons.

First, I note that the State did not need to bring this appeal in order to obtain evidence to prove Pool was driving under the influence of medication. The record demonstrates that, at the State's request, the district court issued a subpoena for the results of the medical blood test lawfully performed by the hospital for diagnostic purposes. The State acknowledged during oral

11

argument that it intends to rely on those test results to prosecute Pool *if it does not prevail in this appeal*. I acknowledge that the State had a right to appeal the district court's order granting a motion to suppress pursuant to Idaho Appellate Rule 11(c)(7). However, I do not think this Court is obliged to hear an appeal that is admittedly duplicative. In fact, such an appeal runs afoul of the purpose of Rule 11(c)(7). "The purpose for allowing an interlocutory appeal of an order suppressing evidence is to correct errors in the exclusion of evidence prior to an improper acquittal of a defendant based on such exclusion because the defendant could not be retried after acquittal and a subsequent appeal." *State v. Savage*, 145 Idaho 756, 759, 185 P.3d 268, 271 (Ct. App. 2008) (citing *State v. Young*, 136 Idaho 113, 118, 29 P.3d 949, 954 (2001)).

Here, there is no danger of an improper acquittal because the State has identical evidence obtained by the hospital for diagnostic purposes that establishes that Pool was driving under the influence of medication. "The independent source doctrine allows admission of evidence that has been discovered by means wholly independent of any constitutional violation." *State v. Russo*, 157 Idaho 299, 306, 336 P.3d 232, 239 (2014) (quoting *Nix v. Williams*, 467 U.S. 431, 443 (1984)). The blood draw performed by the hospital was not taken in violation of Pool's constitutional rights. Accordingly, it would be admissible under the independent source doctrine. Because the State already has the evidence it now seeks in this appeal, it is hard to characterize our efforts as anything other than academic. Although the majority contends that this issue was not addressed below, concerns regarding justiciability may be generally raised by this Court *sua sponte*. *See Tucker v. State*, 162 Idaho 11, 18 n.4, 394 P.3d 54, 61 n.4 (2017) (citations omitted). Further, whether this Court should address an appeal under its own appellate rules, can and should be considered by this Court, even if done so *sua sponte*. Accordingly, I would dismiss the State's appeal.

Second, Pool never knowingly consented, either impliedly or otherwise, to a warrantless blood draw which could be used as evidence against him in a *criminal* proceeding. As the majority correctly notes in footnote 2,

> [t]he ALS [Administrative License Suspension] advisory notifies an individual that he is required by law to submit to evidentiary testing and enumerates the *civil consequences* (i.e., license suspension, civil penalty, installation of an ignition interlock device) of refusing or failing an evidentiary test. . . . However, since this advisory concerns only *civil consequences*, *it is of no consequence to the Fourth Amendment analysis.*

(Italics added.) Notwithstanding this acknowledgement, the majority goes on to conclude that Idaho's *implied consent law* creates a mechanism to countenance the warrantless drawing of Pool's blood for purposes of a *criminal* prosecution. The majority's statement begs an important and critical question: What is the source of the majority's conclusion that Pool *impliedly consented* to waive his Fourth Amendment rights under the United States Constitution? The simple answer is there is none.

In actuality, Pool was *never* advised, by statute or otherwise, that if he were to drive under the influence he had somehow waived his Fourth Amendment right against unreasonable searches. He has never impliedly or explicitly consented to a warrantless blood draw which may be used as evidence against him in a *criminal* proceeding. I have scoured Idaho Code section 18-8002, the statute relied on by the majority to establish implied consent in this case. Nowhere does the statute advise a motorist that one of the consequences of driving in Idaho is that a warrantless blood draw may be used as evidence against him in a *criminal* proceeding. Nor can the majority identify a source for Pool's implied consent. A *sine qua non* to a finding of *implied consent* (especially one which waives a constitutional right) is a statute which implements and explains such a consequence. The legislature simply has not created a statute from which *implied consent* in a *criminal* context may be found.

In *State v. Eversole,* 160 Idaho 239, 371 P.3d 293 (2016), a case quoted and relied on by the majority, the Court wrote:

> Instead, *McNeely* recognized that implied consent statutes are one type of "*a broad range of legal tools* to enforce [ ] drunk-driving laws and *to secure BAC evidence without undertaking warrantless nonconsensual blood draws.*" [*Missouri v. McNeely*, 569 U.S. 141, 160–61 (2013)] (emphasis added). The Court stated, "[s]uch laws impose significant consequences when a motorist withdraws consent; typically the motorist's driver's license is immediately suspended or revoked, and most States allow the motorist's refusal to take a BAC test to be used as evidence against him in a subsequent criminal prosecution." *Id.*

*Id.* at 243, 371 P.3d at 297. What the majority in this case has not grasped, and consequently failed to grapple with, is the simple fact that Idaho is not one of the "most States" which has legislation that establishes the *criminal* repercussions for a motorist who fails to comply with the law. *See, e.g.*, Wis. Stat. § 343.305 (establishing that evidence acquired pursuant to the implied consent laws is admissible at a criminal proceeding).

Before a citizen can *impliedly consent* to having waived a fundamental constitutional right, the citizen must first be advised of the consequences of his behavior. Pool was never

13

advised that by driving on Idaho's roads he was consenting to a warrantless blood draw that could be used against him in a criminal proceeding. Without such notice, it cannot be said that Pool has given knowing consent, implied or otherwise.

The majority appears to misperceive this dissent by suggesting that I would require "actual consent." That is not the case. I agree with the majority that Idaho Code section 18-8002 states, "[a]ny person who drives or is in actual physical control of a motor vehicle in this state shall be deemed to have given his consent to evidentiary testing." However, the majority's opinion has not pointed to anything in Idaho Code section 18-8002 that indicates a driver will face a *criminal* consequence. In fact, there is nothing in Idaho Code section 18-8002 which informs a driver that he is waiving his Fourth Amendment rights in a *criminal* proceeding. Our jurisprudence correctly recognizes that a warrantless search is presumptively unconstitutional. *State v. Albertson*, 165 Idaho 126, 129, 443 P.3d 140, 143 (2019). Yet, the majority casually disregards our established case law to somehow create an exception to the warrant requirement where one does not exist.

The statute in question specifies the civil and administrative penalties associated with refusing to engage in the testing. This is unlike other states' implied consent laws that explicitly describe how the tests will be used, especially in criminal cases. *See, e.g.*, Wis. Stat. § 343.305. The basis upon which those other states conclude a driver has waived his Fourth Amendment rights is "implied consent" via a statute, *not* "actual consent."

Nothing in my dissent should be construed to state that "actual consent" is required over "implied consent." I simply conclude that Idaho's implied consent statute has no application in a criminal prosecution.[5] Without the adoption of an implied consent statute apprising driver of what consent will be implied in a *criminal* context, actual consent from Idaho drivers (or a warrant from a judge) would be required to conduct evidentiary testing in accordance with the Fourth Amendment. Upon adoption of such a statute, a driver, by driving on Idaho's roads, would impliedly consent to the evidentiary tests stated in the statute. However, if a consequence

---

[5] This is best demonstrated by examining the statute. Idaho Code section 18-8002(3) provides, "[a]t the time evidentiary testing for concentration of alcohol or for the presence of drugs or other intoxicating substances is requested, the person shall be informed" of the consequences of refusing to submit to the evidentiary testing. Generally, law enforcement requires a reading of the ALS form as the means to inform Idaho drivers of the consequences of their conduct. However, the consequences detailed in that form only relate to civil and administrative penalties. The ALS advisory is *silent* when it comes to *criminal* consequences. In order to deprive someone of his constitutional rights, it is first necessary to advise him of the consequences of his actions.

is not set forth in such a statute, a driver *cannot* be said to have impliedly consented to such a consequence.

While I obviously agree with the majority that "ignorance of the law" is not a defense, a natural predicate to this proposition is that the legislature must have enacted a law before the adage has any applicability. Here, the legislature has not enacted a statute. Consequently, Pool has not consented to *anything* as it relates to a criminal prosecution. A citizen cannot inform himself of a law which does not exist. The majority's reasoning does nothing to persuade me to alter my conclusion.

Until the legislature corrects this fatal omission, I cannot agree that a driver impliedly consents that a warrantless blood draw may be used against him in a *criminal* proceeding. Because the majority's analysis does not pass constitutional scrutiny under the Fourth Amendment, I respectfully dissent.